MICKLE, Judge.
Appellant seeks review of his conviction for one count of sale or delivery of cocaine. He claims that the trial court erred in refusing to allow him to exhibit his scarred knees to the jury without taking the stand and being cross-examined. Although we agree with appellant that it was error for the trial court to refuse to allow appellant to display his knees to the jury, we conclude that the error was harmless under the facts of this case. We therefore affirm.
The state adduced evidence at trial that Officer Michael Peterson, acting in an undercover capacity, purchased a $20 piece of crack cocaine from a black male during a seven-minute transaction. Officer Peterson described the black male as riding a bicycle, dressed in a white tee-shirt and dark shorts. Officer Peterson does not recall whether he was able to see the individual’s knees during the transaction. Officer Peterson met with Detective Robert Jackson fifteen minutes after the transaction, after which Detective Jackson returned to the location of the transaction and observed an individual matching the description provided by Officer Peterson. Detective Jackson identified appellant in court as the individual he had seen on that date. One day after the drug purchase, Officer Peterson identified a photograph of appellant as the individual who had sold him the cocaine. Officer Peterson has no doubt in his mind that it was appellant who sold him the cocaine. A third police officer, Offi- *1131 eer David Catir, was requested by Detective Jackson to go to the area where the transaction occurred, to identify the individual who had sold Officer Peterson the cocaine. Officer Catir proceeded to the area and observed and spoke with an individual (on a bicycle) matching the description provided to him. Officer Catir also identified the individual as appellant. The written booking sheet/arrest report, introduced into evidence, indicates that, upon appellant’s arrest, appellant had distinguishing marks on his left and right knees. Officer Peterson’s description to Detective Jackson had not included scarred knees.
After the state had rested, defense counsel informed the court that appellant was not going to testify, but that he wished to display his scarred knees to the jury. The trial judge ruled that appellant could not exhibit his knees to the jury unless he was going to take the stand and testify. Defense counsel then conferred with appellant and announced that appellant would not be testifying. Appellant did not display his knees to the jury.
During closing argument, the prosecutor made the following reference to appellant’s scarred knees:
Remember yesterday we heard a lot of questions on cross examination about how long the shorts were, and then the arrest and booking report which I’ll get to in a minute was introduced because apparently there’s some reference on there to scars on the defendant’s knees. And again, the innuendo, the implication there from the defense is oh, there’s a scar on his knee and they didn’t identify that so it must not be him. Speculation, imaginary, forced.
Ladies and gentlemen, use your common sense, the witness is focused on his face, his face and his hands because his face is what’s important, and his hands are what’s important today and his hands was what was important on March the 28th because in those hands were the fruits of this defendant’s occupation, drug dealer.
if? :Js jj:
I mean, after all, what kind of case would it be if a witness came in and said, I don’t know what he looks like but I’d never forget those knees? Ladies and gentlemen, they’re asking you to stretch credibility beyond any reasonable boundary.
In response, defense counsel made the following comments during closing argument:
... I suggest that your common sense and experience will tell you that a person on a bicycle wearing shorts is going to expose his knees. And we know from the arrest sheet that there’s some scars or something on Mr. Rosario’s left knee and his right knee. The only witness who saw this crime, the supposed trained observer, the young man who went through Police Academy either didn’t see that or didn’t remember anything about his knees looking funny.
The case law is clear, as the state concedes, that a display of scars is not testimonial in nature and does not subject a defendant to cross examination. See e.g. Whittington v. State, 656 So.2d 1346 (Fla. 1st DCA 1995); Kulick v. State, 614 So.2d 672 (Fla. 2d DCA 1993); Pettit v. State, 612 So.2d 1381 (Fla. 2d DCA 1992). The state argues, however, and we agree, that the trial court’s erroneous ruling was harmless beyond a reasonable doubt. The drug purchase was face-to-face, and Officer Peterson confidently identified appellant as the individual who sold him the cocaine. Likewise, the identification of appellant by the other two officers was not tenuous. The jury was apprised of the existence of some type of distinguishing marks on appellant’s knees by way of the booking/arrest report, introduced into evidence, which reflected that appellant had distinguishing marks on his left and right knees. Officer Peterson was questioned as to whether he saw any scars on appellant’s knees, and both sides argued the issue to the jury in closing argument. Hence, the jury did not deliberate without any knowledge whatsoever of the existence of possible marks on appellant’s knees, or without hearing appellant’s theory of defense of misidentification. Under these circumstances, we conclude that the failure of the trial court to allow appellant to exhibit his knees to the jury did not contribute to the outcome in this case, and was harmless beyond a reasonable doubt. Stated otherwise, *1132 the jury verdict would not have been different had the jury been allowed to see appellant’s knees. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986)(error harmless where it did not contribute to the verdict or, alternatively stated, where there is no possibility that it contributed to the conviction).
AFFIRMED.
LAWRENCE, J., concurs.
WEBSTER, J., concurring in part and dissenting in part.