The STATE of Ohio, Appellee,

v.

KERSEY, Appellant.

[Cite as *State v. Kersey* (1997), 124 Ohio App.3d 513.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960975.

Decided Dec. 19, 1997.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellee.

*Timothy R. Cutcher,* for appellant.

PAINTER, Presiding Judge.

On June 7, 1996, Joshua Kersey, the defendant-appellant, and several other males were driving by Anita Allen's apartment building when one of the males yelled at Allen. Allen retaliated by throwing an object at the car. This act by Allen angered the group. The group headed to Pasquale's Pizza. While at Pasquale's, Kersey and others examined guns. The group then returned to the car and drove back to Allen's apartment building with two guns in the car.

The driver parked the car on a side street, and three members of the group walked up a hill to the apartment building. An argument ensued with Allen, and shots were fired. One of the shots struck a child bystander in the stomach. The entire group fled from the scene on foot. Kersey was arrested on June 10, 1996. While being questioned by the police, Kersey became upset, turned over a table, and swung a chair at two officers.

Kersey was then indicted on two counts of having a weapon while under a disability under R.C. 2923.13(A)(2), three counts of felonious assault, and two counts of felonious assault on a peace officer (the assaults on the police officers occurred after Kersey's arrest). The three counts of felonious assault included a firearm specification.

Kersey requested a bill of particulars, which was provided by the state. The bill of particulars combined the three counts of felonious assault and one count of having a weapon while under a disability:

"The defendant, on June 7, 1996 at approximately 2220 hours, in the vicinity of 2470 White Street, brandished a .380 caliber handgun and fired an indeterminate number of shots at Paul Barrett. One of the rounds struck a three year old girl, Nicole Williams, in the stomach causing serious injuries. At the time, the defendant was under the disability enumerated in Count One of the Indictment and this Bill of Particulars."

A jury trial began on October 8, 1996. During the course of the trial, witnesses testified about the events that led to the incident on the hill, including the visit to Pasquale's Pizza and the car ride back to Allen's apartment building. The trial

court instructed the jury that it could consider Kersey's possible possession of a firearm before he arrived on the hill in order to find him guilty of having a weapon while under a disability:

"What I want to emphasize to you right here, now, that knowingly possessing or using does not relate only as to what happened up on the hill. It could be anywhere in this area that we have been talking about. If you find that he possessed a firearm, whether it was up on the hill or whether he actually did the shooting or not, but if he possessed a firearm and if he knowingly possessed it, then you may consider that."

The trial court then defined the term "possession" for the jury:

"Now what do we mean by possession? One has possession of an item, in our case, a gun, if he has it for a sufficient period of time to indicate that he has control over it, that he has that control of it to either keep it or to get rid of it. And one does not have to be the owner of the gun. He doesn't have to be the owner. Somebody else could be the owner, as long as he has possession of it as I've defined possession for you."

During deliberations, the jury sent two questions to the trial court: "Does passing gun around in something constitute possession or does the individual have to have it on person?" and "If five person [sic] in car and there are guns present in the car, does that constitute possession?" But the trial court refused to answer the jury's questions and sent back a curt note stating: "The Court cannot answer your questions." Both the prosecution and defense counsel agreed with this response to the jury's questions.

On October 11, 1996, the jury returned verdicts of guilty of assault on the two police officers (a lesser included offense of felonious assault) and of one count of having a weapon under a disability. The jury found Kersey not guilty of the three counts of felonious assault, including the shooting of the child.

Kersey brings three assignments of error. In the first assignment, Kersey argues that the trial court erred by instructing the jury that it could consider his conduct during a time period outside the time specified in the bill of particulars. In the second assignment, Kersey argues that the evidence at trial was insufficient as a matter of law. In the third assignment, Kersey argues that the judgment of the trial court was against the manifest weight of the evidence.

## I. BILL OF PARTICULARS

Crim.R. 7(E) provides that the state shall furnish the defendant with a bill of particulars when properly requested. The purpose of the bill of particulars is to elucidate or to particularize the accused's conduct that allegedly constitutes the offense. *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 411–

412, 478 N.E.2d 781, 784; *State v. Miller* (1989), 63 Ohio App.3d 479, 579 N.E.2d 276. A defendant is entitled to a bill of particulars that sets out the ultimate facts upon which the state expects to rely in establishing its case, and the state should be restricted in its proof to the indictment and to the particulars as set forth in the bill. *Miller, supra; State v. Collett* (App. 1944), 44 Ohio Law Abs. 225, 58 N.E.2d 417.

In this case, the jury instructions allowed the jury to find Kersey guilty of having a weapon while under a disability if it concluded that Kersey possessed a gun at any time leading to the incident on the hill. The trial court did not tailor the instructions in accordance with the bill of particulars. Although the bill of particulars specifically stated that Kersey fired a gun on June 7, 1996, at around 10:20 p.m., and that, "at the time," Kersey was under a disability, the trial court instructed the jury that "possessing or using does not relate only as to what happened up on the hill. It could be anywhere in this area that we have been talking about." In other words, although the state had specified in the bill of particulars that Kersey had a weapon while under a disability because he fired the weapon, the trial court instructed the jury that Kersey could be found guilty of having a weapon while under a disability even if he did not fire a weapon on the hill.

Crim.R. 7(E) does provide that "[a] bill of particulars may be amended at any time subject to such conditions as justice requires." The proper procedure would have been for the prosecution to ask the trial court to amend the bill of particulars. The trial court itself decided to make a tacit amendment while instructing the jury. Therefore, the trial court might have technically erred by expanding the instructions beyond the limit set by the bill of particulars. See *State v. Cookingham* (Dec. 23, 1994), Ashtabula App. No. 93–A–1836, unreported, 1994 WL 738498; *State v. Giles* (Feb. 24, 1993), Ashland App. No. CA–1011, unreported, 1993 WL 49015. In a proper case, we would not hesitate to hold the state to its allegations in the bill of particulars—a defendant is entitled to know the charges against him. But under the facts of this case, Kersey was not prejudiced by the variance.

Crim.R. 33(E)(2) states that a verdict shall not be set aside, nor shall any judgment of conviction be reversed because of a variance between the allegations and the proof unless the defendant is misled or prejudiced by the variance. Kersey has not shown that the variance between the evidence presented at trial and the bill of particulars was misleading or prejudicial to his defense. See *State v. Williams* (Dec. 1, 1993), Hamilton App. No. C–920869, unreported, 1993 WL 547184. Kersey was under the same prohibition from having the weapon at all relevant times. Evidence of the possession of the guns just before the shooting was admitted without objection throughout the trial, which shows that Kersey

understood that he was being tried for having a weapon during that time frame—not just for the short time on the hill. If the record were less clear on that issue, or if Kersey had (1) claimed surprise and had requested a continuance or (2) requested that the prosecution be limited in its allegations, we might very well reach a different result here.

In addition, Kersey did not object to this claimed error in the jury instructions. Absent plain error, the failure to object to an error before the jury retires constitutes a waiver. Crim.R. 30(A); *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332. The plain error rule in Crim.R. 52(B) allows defects that affect substantial rights to be noticed although they were not brought to the attention of the trial court. But an alleged error does not constitute plain error unless the outcome of the trial would clearly have been different if the error had not occurred. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920, certiorari denied (1990), 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452. Because we have determined that Kersey was not prejudiced by the slight expansion of the bill of particulars, the jury could have, and obviously did, find him guilty of the possession of the gun during that expanded time. Therefore, we conclude that the trial court's instructions on this issue did not constitute plain error. Crim.R. 52(B).

Therefore, Kersey's first assignment of error is overruled.

## II. ANSWERING THE JURY'S QUESTIONS DURING DELIBERATION

The trial court was not prohibited from answering the jury's questions of law that were asked during deliberation. The existence of R.C. 2945.10(G) and of Crim.R. 30(A) has caused confusion in trial courts about submitting written instructions to the jury and about answering questions from the jury during deliberation. Though we cannot determine if this was the situation here, many trial courts have evidently interpreted R.C. 2945.10(G) to forbid them to answer a jury's questions if they have given the jury written instructions. R.C. 2945.10(G) states:

"The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case."

But Crim.R. 30(A) states:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

"On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

The Fourth Appellate District of Ohio has held: "While the statute prohibits qualifications, modifications, and explanations by the court when the charge is given, the statute does not prohibit qualifications, modifications, and explanations by the court in response to questions posed by the jury during deliberations." *State v. Holdcroft* (Feb. 25, 1986), Athens App. No. 1221, unreported, 1986 WL 2990. Nonetheless, to the extent that this code section conflicts with Crim.R. 30, it has no further force or effect. Section 5, Article IV, Ohio Constitution.

█ We conclude that Crim.R. 30 supersedes R.C. 2945.10(G). A trial court is not required to reduce its instructions to writing, but even if it does, it is not prohibited from answering a jury's questions of law during deliberation. Crim.R. 30(A). Our colleagues in Cuyahoga County agree: "We find no requirement in Crim.R. 30 * * * that the trial court must refrain from further oral explanations when it chooses to use written jury instructions. No such obligations persist under the Criminal Rules." *State v. Mitchell* (Feb. 3, 1983), Cuyahoga App. No. 45014, unreported, 1983 WL 5738.

█ In Kersey's case, the trial court verbally instructed the jury. When transcribed in the record, the verbal instructions were over thirty pages in length, but the jury did not receive a written copy of those instructions to use during deliberation. Because the trial court did not give the jury written instructions, the trial court should not have been confused about its ability to answer the jury's questions. However, a trial court has broad discretion to determine how it will respond to a jury's request for further instruction. *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965, certiorari denied (1995), 516

U.S. 1014, 116 S.Ct. 575, 133 L.Ed.2d 498; *State v. Cole* (Jan. 22, 1997), Hamilton App. No. C–950900, unreported, 1997 WL 22659.

■ Here, the jury did not receive a written copy of the instructions, and the trial court would not respond to its request for clarification of those instructions. The jury was obviously confused about the definition of "possession." At the very minimum, the trial court could have reread the definition from the jury instructions. However, the trial court just sent the jurors a note: "The Court cannot answer your questions." The jury was left unguided and faced the difficult challenge of remembering the oral charge. The defense, however, consented to the note, thus waiving any claimed error.

■ Although not required by Crim.R. 30, the better practice is for the trial court to furnish the jury with written copies of the instructions. Before word processors, this might have been an onerous task. But it is onerous no longer, and we recommend that when possible, trial courts, after orally instructing the jury, send written copies, one for each juror, to the jury room.[1] This practice will avoid many problems.

■ If the trial court is prevented from sending written instructions to the jury, perhaps by mechanical failure or constraints of time, then it should answer the jury's questions of law regarding those instructions.

■ But Kersey did not object to the trial court's response to the jury's questions, and thus the alleged error is waived, absent plain error or an abuse of discretion. Under the circumstances here, we cannot say that the trial court abused its discretion or committed plain error

## III. INSUFFICIENCY OF THE EVIDENCE

■ Kersey alleges that sufficient evidence did not exist to sustain a conviction against him for having a firearm while under a disability. Sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. Several witnesses placed a firearm on Kersey while he was walking up the hill or while he was on the hill, and the state presented evidence concerning the other elements of the offense. We conclude that sufficient evidence existed regarding each element of having a firearm while under a disability. See *id.* Therefore, Kersey's second assignment of error is overruled.

---

1. Counsel must be given an opportunity to review the written instructions before their submission to the jury, and the defendant must be included in this review. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 85, 564 N.E.2d 54, 70.

## IV. MANIFEST WEIGHT OF THE EVIDENCE

Kersey alleges that the trial court's judgment was against the manifest weight of the evidence. A reviewing court must determine whether the jury clearly lost its way and created a manifest miscarriage of justice, so that the case must be reversed and a new trial ordered. See *Thompkins, supra; State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721. But "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." See *Martin, supra.* The evidence in this case does not weigh heavily against a conviction. Sitting as the "thirteenth juror," we cannot disagree with the jury's resolution of the testimony. The evidence that was presented often conflicted, and the jury was in the best position to decide whom and what to believe. Therefore, Kersey's third assignment of error is overruled.

The trial court's judgment is affirmed.

*Judgment affirmed.*

DOAN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.