OPINION
This is an appeal from the Trumbull County Court of Common Pleas. Appellant, Timothy Kirin, appeals the trial court's judgment entry sentencing him for his conviction on one count of kidnapping and one count of rape.
Appellant was arrested in September 1997, for the July 20, 1997 rape of a woman. The Trumbull County Grand Jury indicted appellant on one count of kidnapping, in violation of R.C.2905.01(A)(4), and one count of rape, in violation of R.C.2907.02(A)(2). Appellant entered a plea of not guilty and also agreed to take a polygraph examination, which was conducted on May 8, 1999.
The polygraph exam was administered by William Evans ("Evans"). In that examination, appellant was asked four questions: (1) whether the victim, Donna (last name omitted to protect her privacy), had engaged in sex with him on the night at issue; (2) whether she willingly engaged in sex with him; (3) if she told him in his car that she did not want to have sex; and (4) whether he forced her in any way to have sex against her will that night. The results of the polygraph to those four questions indicated that appellant had been deceptive on all four of his responses.
On April 19, 1999, the matter was tried by a jury. At trial, evidence was presented that appellant and Donna had been drinking in a downtown Warren lounge. When Donna was ready to leave, appellant offered to drive her home, which she accepted. Instead of pulling his car onto a main street in the city, appellant pulled his car behind the bar and drove along a set of railroad tracks. Donna then tried to get out of the car, but appellant refused to let her leave. Appellant then ordered her to remove her clothing and pulled her hair and arms. Donna then removed her clothing as ordered, at which time appellant engaged in intercourse with her.
After the incident, Donna was driven by appellant to her home and let out of his automobile. However, instead of going home, Donna went to the house of a friend, Angel Yager ("Yager"). She asked Yager if she could call her mother, Mildred Emery ("Mildred"). Yager indicated that Donna was crying hysterically as she called Mildred. Yager then walked Donna halfway to Mildred's house.
Upon arriving at her mother's residence, Donna was crying. She told Mildred that she had been raped. Donna's blouse was open and she appeared disheveled. Her mother then called the Warren City Police Department. A police officer, Patrick Marsico ("Officer Marsico"), responded to the call concerning Donna in the early morning hours of July 20, 1997. At that time, she was sobbing and appeared to be in a state of shock. Donna was then transported to the Trumbull Memorial Hospital, where Dr. James Sudimack ("Dr. Sudimack") administered a rape kit.
Dr. Sudimack did not find any significant abrasions, but testified that it was not uncommon for there not to be any visible injury upon a visual examination in a rape case. Dr. Sudimack further testified that Donna's "appearance was consistent with somebody who had been raped."
On July 29, 1997, a six-man photo spread was presented to Donna, who identified appellant. Upon her identification of appellant, police made several attempts to contact appellant by telephone. Appellant also failed to appear at the police station for a meeting to be held on August 4, 1997. Police arrested appellant after physical evidence that was collected at the hospital was submitted to the Bureau of Criminal Identification at Richfield ("BCI"). It was found to contain serological evidence on Donna's vaginal smears, semen on her underwear and blue jeans, and blood on her underwear. The arrest occurred on September 25, 1997.
After being arrested, appellant provided a written statement to the police, which was admitted at trial. In that statement, he acknowledged having sexual intercourse with appellant on the evening in question. At trial, he argued that the sex was consensual. During the trial, appellant's polygraph results were admitted. In explaining his polygraph results to the jury, appellant stated that the results were affected by the fact that his daughter had been killed in an automobile accident the day before taking the test, and that he was on his way to the funeral home when he stopped for the examination.
On rebuttal, the state called Evans to the stand, who then testified that appellant had told him during the pre-test interview that his stepdaughter had died "quite some time prior" to the examination of May 8, 1998. Evans further testified that there was nothing disclosed during the pre-test interview that would have prohibited the test from being administered. Importantly, prior to the conclusion of trial, both parties stipulated that April Hanick, appellant's stepdaughter, had died on March 13, 1998.
On April 23, 1999, after the trial had concluded, the jury found appellant guilty on both counts, as charged. After holding a sentencing hearing, the trial court issued a judgment entry sentencing appellant for a term of incarceration of nine years on count one and nine years on count two, both sentences to run concurrently.
Appellant now appeals the trial court's judgment entry, raising the following assignments of error:
 "[1.] The trial court erred by failing to adequately respond to a question of law, submitted to the court by the jury after they had retired to deliberate, relating to the elements of a crime with which [appellant] was charged, to the prejudice of [appellant].
 "[2.] The trial court erred by denying [appellant's] motion for a new trial.
 "[3.] [Appellant's] conviction for rape is against the manifest weight of the evidence.
 "[4.] [Appellant's] conviction for [kidnapping] is not supported by sufficient evidence.
 "[5.] The trial court erred by failing [to] grant [appellant's] motion for a mistrial."
In the first assignment of error, appellant avers that the trial court committed reversible error by failing to answer the jury's question concerning the elements of kidnapping. Specifically, the jury submitted a question to the trial judge which read, "To be found guilty of kidnapping, does the defendant have to be found guilty of all parts, three, of the charge?" Appellant states that the judge's answer to the jury, that it must rely on the jury instructions previously given, was merely a reiteration of the elements of the charge. Appellant claims that the judge should have answered in the affirmative to the question and then restated the elements of kidnapping.[1]
We note that, on appeal, counsel for appellant objected to the trial judge's answer that the jury must rely on the instructions previously given. The transcript shows that appellant objected on the basis that the answer to the question should be "yes," followed by a discussion of the elements.
Appellant now bases his allegation of error on the rationale in State v. Bruner (Jan. 7, 1987), Hamilton App. No. C-860075, unreported, 1987 WL 5254. In that case, the appellate court citesCincinnati v. Epperson (1969), 20 Ohio St.2d 59, paragraph three of the syllabus, which states that "[t]he failure by the trial court in a criminal case to answer a question of law relating to a defense presented, which is submitted to the court by the jury after they had retired to deliberate, is error prejudicial to [a] defendant's substantial rights."
Jury instructions should contain plain, unambiguous statements of the law applicable to the case and evidence presented to the jury. Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. The jury instructions provided by the trial court must be confined to the issues raised by the pleadings and the evidence. Becker v. Lake Cty. Mem.Hosp. W. (1990) 53 Ohio St.3d 202, 208. The trial court may not instruct a jury where there is no evidence to support a particular issue. Id. Additionally, "[w]here, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." State v. Carter (1995),72 Ohio St.3d 545, paragraph one of the syllabus (overruling Epperson, 20 Ohio St.2d at paragraph three of the syllabus). Indeed, a reversal of a criminal conviction, based upon a trial court's response to such a request from the jury, requires a showing that the lower court committed an abuse of discretion. Id. at 553.
In Carter, the jury went into its deliberations after the trial had concluded, and during its deliberations, asked the trial judge to further explain the definition of "purposely," as contained in the jury instructions. The trial judge responded by refusing to grant any additional instruction and directed the jury to consult the instructions already given to them. The Supreme Court of Ohio held that even though defense counsel failed to advance an objection to the trial court's response, the trial court did not commit an abuse of discretion in issuing its response. Id.
Moreover, in State v. Kersey (1997), 124 Ohio App.3d 513,521, the trial judge orally instructed the jury without providing any written jury instructions. Later, the jury submitted a question to the judge concerning the definition of the term "possession," as stated in the instructions. The trial judge refused to provide any additional guidance and simply told the jury that "the Court cannot answer your questions." Id.
On appeal, the First District Court of Appeals stated that the trial judge improperly failed to further instruct the jury since they were obviously confused about the definition of the word in question, and the court's directive that it could not answer their question was error because there were no written jury instructions for them to consult. Id. The appellate court stated that the trial judge would not have committed error in refusing to answer the question if he had provided the jury with written jury instructions for them to consider rather than having the jury rely on their memory of the oral charge. Id. However, the error was not reversed on appeal solely because appellant's counsel failed to object to the lack of some re-instruction on the word when it occurred, and thus the issue was waived. Id.
We further note that appellant's reliance on Bruner, which in turn was an opinion based on paragraph three of the syllabus inEpperson, is misplaced since that provision of Epperson was expressly overruled by the Supreme Court of Ohio in Carter.
Also, the Carter and Kersey cases demonstrate that the trial court need not provide additional instruction to the jury regarding questions it may have in all situations. In fact, both of those cases indicate that a trial judge has broad discretion to answer a jury question with a supplemental instruction or direct the jury's attention to the correct jury instructions already provided.
In the instant matter, there has been no contention that the judge's instructions misapplied the law or were misleading. Thus, even if appellant had properly objected, the lower court's reliance on the written jury instructions was not in error based on the facts of this case. Accordingly, appellant's first assignment of error is without merit.
In his second assigned error, appellant claims that the trial court erred by overruling his motion for a new trial, since appellee's polygraph examiner, Evans, testified concerning studies on the reliability of polygraph examinations without making the study available to the court or appellant. Appellant argues that the trial court failed to sua sponte demand that the reliability study be presented. In so doing, he claims Crim.R. 33(E), which states that a new trial may be granted if a defendant is prejudiced by the admission or rejection of evidence, was satisfied. Appellant further avers that the trial judge erred when he sustained an objection by counsel for appellee concerning the questions of appellant's counsel to Evans regarding the results of the American Psychiatric Association's polygraph accuracy tests, which was another study.
Contrary to appellant's first assertion, the reliability study need not be presented for Evans to discuss it because, "[m]ere references to studies by other experts in a field as a basis of the `scientific, technical, or other specialized knowledge' which Evid.R. 702 requires of an expert witness does not violate Evid.R. 706." Wurts v. Gregg (Jan. 28, 2000), Montgomery App. No. 17682, unreported, at 3, 2000 WL 84660. Additionally, in State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, the Supreme Court of Ohio held: "[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. (Paragraph one of the syllabus of State v. Glaros (1960),170 Ohio St. 471, approved and followed.)"
In State v. Awan (1986), 22 Ohio St.3d 120, 122, the Supreme Court of Ohio reiterated the standard to be applied when a party fails to object when it stated: "[t]he general rule is that `an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' * * *"
In the case sub judice, appellant failed to object to Evans' testimony concerning the polygraph study where he indicated that polygraph examinations were approximately ninety percent accurate. Neither did he ask for a continuance or an opportunity to review the study and re-call the witness, if necessary. The only objection articulated concerning the exam centered upon whether Evans had previously testified that a polygraph examination was ninety-six percent or ninety-eight percent correct. Thus, on the basis of the firmly rooted principles articulated in Williams andAwan, appellant is barred from now asserting this assignment of error because he has waived it by failing to object at a time when the trial court could have remedied the problem.
Finally, the trial judge properly sustained an objection by counsel for appellee concerning appellant's counsel's questions to Evans regarding the results of the American Psychiatric Association's polygraph accuracy tests. The objection was properly sustained since Evans testified that he did not rely on that test for his testimony and was not familiar with the test. Moreover, the test was not produced at trial for Evan's review.
Consequently, appellant's second assignment of error is not well-taken.
In the third error assigned, appellant claims that his conviction for rape was against the manifest weight of the evidence. Specifically, appellant states that the evidence produced at trial was unclear, unreliable, and often contradictory concerning the events of the night in question.
The standard to be applied in addressing an argument that the verdict was against the manifest weight of the evidence was set forth by this court in State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 11:
 "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' * * *" (Citations omitted and emphasis sic.)
In State v. Seiber (1990), 56 Ohio St.3d 4, 13, the Supreme Court of Ohio wrote:
 "`A reviewing court will not reverse a jury verdict when there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' State v. Eley (1978), 56 Ohio St.2d 169 * * *, syllabus. Accord State v. Eskridge (1988), 38 Ohio St.3d 56
* * *, paragraph two of the syllabus." (Parallel citations omitted.)
The record in the instant matter reveals that it is uncontradicted that appellant and Donna engaged in sexual intercourse on the evening in question. There was also evidence that appellant offered to drive Donna home, and instead of taking her home, he drove his car behind the bar and down a set of railroad tracks. The victim testified that appellant ordered her to remove her clothes and pulled her hair and arms before she undressed. Further, she testified that she did not want to engage in sexual intercourse with appellant. Once being driven home, Donna went to a friend's house, Yager's, instead of going inside her house, and was found by that friend at her front door crying hysterically. While at Yager's house, Donna telephoned her mother, Mildred. Donna then went to Mildred's house and told her she was raped.
Furthermore, that same night, the police were called concerning the incident on the night in question. Officer Marsico, the responding police officer, indicated that Donna was sobbing and appeared to be in a state of shock. Donna was then taken to a hospital, where she voluntarily submitted to a rape examination. The examining physician, Dr. Sudimack, testified at trial that Donna's "appearance was consistent with somebody who had been raped." However, he did not qualify that observation at trial.
Additionally, Donna identified appellant in a photographic line-up. There was evidence from the BCI lab that found semen on her underwear and blue jeans, blood on her underwear, and serological evidence on her vaginal smears. Finally, there was evidence that appellant was deceptive in his answers to the polygraph examination concerning the event of that night.
Provided that Donna's testimony was found to be credible, which the jury clearly found to be the case, then there was substantial evidence for a jury to find appellant guilty. In fact, based on the overwhelming evidence presented concerning appellant's guilt for the crimes charged, we conclude that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, appellant's third assignment of error is meritless.
In the fourth error raised, appellant states that his conviction for kidnapping was not supported by sufficient evidence.
As the court stated in Schlee, supra, unreported, 10-11:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *"'" (Emphasis sic.)
The elements of kidnapping are defined in R.C.2905.01(A)(4) as employing force, threat, or deception, to remove another person from the place where he or she was found, or restrain the liberty of another person, for the purpose of engaging in sexual activity.
In this case, there was evidence that appellant ordered Donna to remove her clothes and pulled her hair and arms until she submitted. Additionally, Donna left the bar after appellant led her to believe that he would drive her home, when in fact, he drove her to an isolated spot along the railroad tracks where he then engaged in involuntary sex with her. Considering this evidence, in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense of kidnapping were met beyond a reasonable doubt, as stated in Schlee. Thus, appellant's fourth assignment of error is not well-founded.
In his fifth assignment of error, appellant contends that the trial court erred by failing to grant his motion for a mistrial. In this assignment, appellant claims that a mistrial should have been granted because the trial judge spoke with the jury after the rendering of the verdict in the jury room without defense counsel present. Appellant states that the meeting destroyed the impartiality of the jury.
In advancing this assignment, appellant fails to argue that his counsel objected to the judge meeting with the jurors. Indeed, after reviewing the record, we are unable to find any such objection. Importantly, the issue raised in this assignment of error does not constitute plain error pursuant to Crim.R. 52(B), since the judge's meeting with the jurors after the verdict had been rendered does not conflict with the rendering of a guilty verdict prior to the meeting in this case. However, the practice of a judge meeting with the jurors before they have been discharged is highly discouraged by this court because there may still be motions to be advanced to the court prior to the jury's discharge. The practice is also inappropriate since the jury may still have service to the court in its term. Thus, appellant's fifth assignment of error is without merit on the facts of this case.
For the foregoing reasons, appellant's assignments of error are not well-taken, and the judgment of the Trumbull County Court of Common Pleas is affirmed.
 ______________________________________________ DONALD R. FORD, PRESIDING JUDGE
CHRISTLEY, J., O'NEILL, J., concur.
[1] The jury had been given written copies of the original instructions.