DECISION.
Defendant-appellant Richard J. Lemker was charged in a seven-count indictment with three counts of attempted murder, three counts of felonious assault, and a single count of carrying a concealed weapon. Each count carried two gun specifications. The charges were tried to a jury, which found Lemker guilty of a single count of attempted murder and three counts of felonious assault, and returned positive findings on the accompanying gun specifications. The trial court sentenced Lemker as appears of record and entered judgment accordingly.
From that judgment, Lemker has taken the instant appeal, in which he presents six assignments of error. Of the challenges advanced, the only meritorious challenge is that presented in his fifth assignment of error to the imposition of consecutive sentences. We, therefore, affirm the judgment of conviction in part, reverse in part and remand this cause to the trial court for resentencing.
 I.
Lemker, in his first assignment of error, contends that the trial court erred in effectively granting the state a peremptory challenge beyond the four challenges permitted by Crim.R. 24(C). We find no merit to this contention.
In the proceedings below, on the morning after the jury had been empanelled and sworn, the trial court met in chambers with counsel for the defense, counsel for the prosecution, and a juror.[1] There, the juror disclosed that he had been less than forthright when, in response to direct questions posed on his juror questionnaire and during his voir dire examination, he had declared that he had never been convicted of a criminal offense. He admitted that he had, in fact, been convicted seven or eight years previously of receiving stolen property. The trial court, over defense counsel's objection, discharged the juror and replaced him with an alternate.
The prosecution had, over the course of the voir dire examination of prospective jurors, exhausted the four peremptory challenges afforded by Crim.R. 24(C). But the appellant misses the mark with his argument that the trial court, by discharging the dissembling juror, effectively afforded the prosecution a fifth peremptory challenge.
Crim.R. 24 and R.C. 2945.25 provide various means for excusing from a jury a prospective juror who is shown to be unqualified, unsuitable or undesirable. Thus, Crim.R. 24(B)(14) and R.C. 2945.25(O) permit counsel to challenge and a court to excuse for cause a prospective juror shown to be "unsuitable * * * to serve as a juror."
Once the jury has been empanelled and sworn, the trial court may discharge the juror and replace him with an alternate if the juror has "become sick, or for some other reason is unable to perform his duty," R.C. 2945.29, or if the juror has "become or [is] found to be unable or disqualified to perform [his] duties." Crim. R. 24(F). The decision to discharge a juror and replace him with an alternate, as contemplated under R.C. 2945.29 and Crim.R. 24(F), is committed to the sound discretion of the trial court and will not be disturbed on appeal unless the court has abused its discretion. See State v. Coleman (1988),37 Ohio St.3d 286, 293, 525 N.E.2d 792, 799; State v. Gleason (1989),65 Ohio App.3d 206, 210, 583 N.E.2d 975, 977.
We hold that the court below did not abuse its discretion by discharging and replacing the juror, when the juror's dissembling would have provided cause for excusing him during voir dire and further provided a basis for a determination that he was unsuited to and incapable of performing the duties required of a juror. We, therefore, overrule the first assignment of error.
 II.
In his second assignment of error, Lemker challenges the trial court's exclusion of psychiatric testimony supportive of his claim that he had acted in defense of himself and/or his wife. In his third assignment of error, he challenges the court's refusal to instruct the jury on self-defense and/or defense of others. We address these challenges together and find them to be untenable.
The charges against Lemker arose in connection with the events of January 26, 1998. At trial, Lemker testified that, on January 22, his wife, Ericka, had "disappeared" from their home in northern Kentucky, as she had done for weeks at a time and with increasing frequency over the course of their three-year marriage. Lemker had learned that, during an earlier disappearance, Ericka had rented an apartment in the city of Norwood, Ohio. On January 26, he drove to Norwood and cruised past Ericka's apartment building, but he elected not to stop when he observed, parked in front of the apartment building, a sport utility vehicle that he knew belonged to Fred Horn.
After returning to his home, and upon further reflection and "contemplat[ion of] the likelihood of risk involving Mr. Horn[,] * * * the prior incidents involving Mr. Horn[,] and violence, threats and delays in securing communication and retrieval of Ericka * * * as a result of Mr. Horn's prior presences," Lemker devised a "course of action." He armed himself with a .44-caliber revolver, a shotgun, and a substantial amount of ammunition for each and returned to Norwood.
When Lemker arrived in Norwood, Horn's sport utility vehicle was no longer parked on the street in front of the apartment building. Lemker, nevertheless, did not proceed to Ericka's apartment. He, instead, parked a short distance down the block, remained in his car, and watched the street in front of her building.
Ericka Lemker did not testify at trial because she could not, at the time of trial, be located. Horn testified that he and Ericka had begun cohabitating in December of 1997. On January 26, 1998, an illness had compelled Horn to leave work early, and he spent the balance of the day in the Norwood apartment with Ericka and Laran Williams, Ericka's eight-year-old son from a previous relationship. At approximately 4:00 p.m., Ericka left the apartment in Horn's vehicle. When she returned an hour later, she was, according to Horn, "hysterical," because she had seen Lemker sitting in his car at the end of the street. Horn decided that he and Ericka would take Laran to Laran's father's home and then proceed to a police station to report Lemker's actions.
Meanwhile, Lemker, having observed Ericka's return to the apartment, had retrieved his weapons from the trunk of his car and resumed his vigil. Five minutes later, he saw Ericka, Horn, and Laran emerge from the apartment building and enter Horn's vehicle. Acting upon his belief that Horn presented a "threat of violence" to Ericka, Laran and him, and to prevent Horn from transporting Ericka and Laran to "another location," Lemker sped forward, pulled his car to the curb at an angle in front of Horn's vehicle, got out of his car, and positioned himself between the two vehicles, with the revolver in his hand.
What happened next is a point of some dispute. Lemker testified that he carried the revolver at his side, pointed toward the ground, until Horn started to pull his vehicle forward, at which time Lemker raised the gun and fired it in the direction of the vehicle. Laran Williams also testified that the vehicle was moving forward when Lemker fired the gun. Horn testified, to the contrary, that Lemker had, in quick succession, gotten out of his car, aimed the gun at him from a distance of approximately five feet, and fired, prompting him to back up and then pull forward, whereupon he inadvertently struck Lemker with his vehicle and ran over him.
Whatever their sequence, as a consequence of these actions, Horn's vehicle bore a bullet crease on the driver's-side hood, and Lemker lay on the ground, disarmed by the impact of Horn's vehicle and dazed by a head wound. Horn immediately stopped his vehicle and "stood guard" over Lemker's gun, while a bystander summoned the police.
In preparation for trial, the defense had secured the services of a psychologist, who tested and examined Lemker and then committed to videotape his expert opinion concerning Lemker's "state of mind" at the time of the offenses. The psychologist testified in his deposition that Lemker possessed, at the time of the offenses, "a very genuine and sincere belief that his wife [and he] were at serious risk of imminent harm from a man that [Lemker] considered armed and dangerous." The psychologist based his opinion on the mental-health histories of Lemker and Ericka; on Lemker's "belie[f] * * * that [Ericka] was unusually vulnerable to rape or sexual assault, and * * * that [Horn] was unusually capable of it"; and on Lemker's belief, which stemmed in part from his "narcissistic and paranoid tendencies," that he had a "special capacity and obligation to protect his wife."
Prior to trial, the prosecution, in anticipation of Lemker's claims of self-defense and defense of another, sought by an oral motion in limine
to preclude the admission of the psychologist's opinion testimony. The court cautioned the defense that the psychologist's testimony would be inadmissible in the absence of other evidence probative of self-defense or defense of others.
At trial, after Lemker had testified, the defense requested that the psychologist's videotaped deposition be played for the jury. The court excluded the evidence, and the defense preserved its claim of error by proffer and then rested. The court subsequently denied the defense's written request for instructions on self-defense and defense of others.
Self-defense and defense of others are affirmative defenses. See Statev. Martin (1986), 21 Ohio St.3d 91, 94, 488 N.E.2d 166, 168. Therefore, the accused bears the burden of going forward with the evidence and the burden of proving such defenses by a preponderance of the evidence. See R.C. 2901.05(A).
To establish self-defense, the accused must show (1) that he "was not at fault in creating the situation giving rise to the affray," (2) that he had "a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force," and (3) that he did "not * * * violate any duty to retreat or avoid the danger." State v. Robbins (1979),58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus (Statev. Melchior [1978], 56 Ohio St.2d 15, 381 N.E.2d 195, approved and followed); see, also, State v. Thomas (1997), 77 Ohio St.3d 323, 326,673 N.E.2d 1339, 1342.
Ohio has also long recognized a right to defend a family member. SeeSharp v. State (1850), 19 Ohio 379. To establish the affirmative defense of "defense of family," the accused must show (1) that he "in good faith and upon reasonable ground believe[d] that a family member [was] in imminent danger of death or serious bodily harm," and (2) that the force used was "reasonably necessary to defend" the family member and was the same force that "he would [have been] entitled to use in self-defense."State v. Williford (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279, paragraph one of the syllabus (Sharp v. State, supra, and State v. Sheets [1926],115 Ohio St. 308, 152 N.E. 664, approved and followed).
An accused is entitled to an instruction on self-defense or defense of family, if he "has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." Melchior, supra, paragraph one of the syllabus; accord Williford, supra at 251, 551 N.E.2d at 1282.
Lemker testified at trial to his belief that he and Ericka were in imminent danger of great bodily harm and could escape only by means of the force used. The defense's psychologist offered his expert opinion that Lemker's belief was "very genuine and sincere." The sincerity of Lemker's belief was indisputably relevant to the issue of whether Lemker's conduct could be legally excused under the affirmative defense of self-defense or defense-of-family. See Evid.R. 401. But expert opinion testimony concerning the sincerity of that belief might properly have been excluded on the ground that it was a matter within the knowledge or experience of the jurors. See Evid.R. 702(A).
Moreover, the record of the proceedings below is devoid of evidence that would reasonably support a finding that Lemker "was not at fault in creating the situation giving rise to the affray," that he did "not * * * violate any duty to retreat or avoid the danger," or that his belief that Ericka was "in imminent danger of * * * serious bodily harm," as "sincere" as it might have been, was founded "upon reasonable ground." The psychologist's testimony would not have filled this evidentiary void and, in the absence of evidence supportive of the other elements of the claimed defenses, would merely have confounded the issues that were properly before the jury. Thus, the psychologist's testimony was subject to exclusion on the ground that its probative value was "substantially outweighed by the danger of * * * confusion of the issues, or of misleading the jury." See Evid.R. 403(A).
For these reasons, we hold that the trial court properly excluded the psychologist's testimony and properly declined to instruct the jury on self-defense or defense of family. Accordingly, we overrule the second and third assignments of error.
 III.
In his fourth assignment of error, Lemker challenges the trial court's refusal to accede to the jury's request during deliberations that the court reread the definitions of the charged offenses provided in the jury instructions. This challenge is feckless.
The response of a trial court to a jury's request to hear again portions of the jury charge is discretionary and will provide a basis for reversal on appeal only upon some demonstration that the court has abused its discretion. See State v. Carter (1995), 72 Ohio St.3d 545,651 N.E.2d 965, paragraph one of the syllabus (overruling Cincinnati v.Epperson [1969], 20 Ohio St.2d 59, 253 N.E.2d 785, paragraph three of the syllabus).
In the proceedings below, the trial court elected not to provide the jury with a written copy of its rather lengthy jury charge. It then cited the charge's length in support of its decision not to reread what would, in essence, have constituted the bulk of the charge.
The defense failed, however, to object to the trial court's refusal to reread the requested portions of the jury charge. Thus, Lemker waived consideration of the alleged error on appeal, unless it constituted plain error. See Crim.R. 52(B). We conclude that it did not.
A trial court is under no compulsion to reduce its instructions to writing or to provide the jury with a copy of a written charge for its deliberations. See Crim.R. 30(A). But when, as here, the accused is charged with multiple offenses against multiple victims, and the jury charge is, consequently, substantial in its length and convolutions, the better practice is to provide the jury with a written charge. Failing that, the court should readily accede to the jury's request that portions of the charge be reread. See State v. Kersey (1997), 124 Ohio App.3d 513,519, 706 N.E.2d 818, 821-822.
Nevertheless, the jury in the proceedings below proceeded without further instruction to acquit Lemker of the attempted murders of Ericka Lemker and Laran Williams and of carrying a concealed weapon, and to find him guilty of the attempted murder of Fred Horn and of felonious assault upon all three victims. This suggests that the jury was sufficiently conversant with the definitions of the offenses to make the important distinctions, and to return the verdicts, that the evidence permitted.
We, therefore, hold that the trial court's refusal to reread the requested portions of the jury charge did not constitute plain error, when, on the record before us, we cannot say that, but for the court's refusal, the outcome of the trial would have been different. See Statev. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus. Accordingly, we overrule the fourth assignment of error.
 IV.
We address next Lemker's sixth assignment of error, in which he contends that he was deprived of the effective assistance of counsel, when defense counsel filed but failed to secure a ruling on his Crim.R. 33 motion for a new trial on the ground of newly-discovered evidence. On the state of this record, there is no basis for sustaining this challenge.
The jury in the proceedings below returned its verdicts against Lemker on April 6, 1999. On April 22, the trial court sentenced Lemker as appears of record and entered judgment accordingly. On May 7, 1999, Lemker filed a notice of appeal from the April 22 judgment of conviction, and the record of the proceedings at trial was duly transmitted.
Lemker asserts that, on September 1, 1999, his trial counsel filed, but then failed to prosecute, a motion for a new trial on the ground of newly-discovered evidence. The record properly certified in this appeal, which was perfected nearly four months before the motion was filed, does not reflect the filing of the motion or the motion's disposition (or the lack thereof), nor does it otherwise demonstrate the omissions of counsel of which Lemker now complains.
Trial counsel's performance will not be deemed ineffective unless the appellant shows that "counsel's representation fell below an objective standard of reasonableness," see Strickland v. Washington (1984),466 U.S. 668, 688, 104 S.Ct. 2052, 2064, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." See State v. Bradley (1989),42 Ohio St.3d 136, 143, 538 N.E.2d 373, 380. Our review of counsel's effectiveness is clearly hampered by the deficiencies in the record concerning the matters surrounding the new-trial motion.[2] More significant, however, is the matter of jurisdiction.
A Crim.R. 33(A)(6) motion for a new trial on the ground of newly-discovered evidence operates to extend the thirty-day period for filing a notice of appeal if the motion is filed within fourteen days after the verdict is rendered. See App.R. 4(A) and 4(B)(3); Crim.R. 33(B). The filing of such a motion more than fourteen days after the return of the verdict does not extend the time for appeal. Therefore, Lemker's May 7, 1999, notice of appeal from the April 22 judgment of conviction has not conferred upon this court jurisdiction over Lemker's September 1 motion for a new trial.
Moreover, Lemker's appeal from the judgment of conviction divested the trial court of jurisdiction over the case, except to act in aid of the appeal or in a manner "not inconsistent with [this court's jurisdiction] to review, affirm, modify or reverse the final order, judgment or decree from which the appeal has been perfected." In re Kurtzhalz (1943),141 Ohio St. 432, 48 N.E.2d 657, paragraph two of the syllabus; accordYee v. Erie County Sheriff's Dept. (1990), 51 Ohio St.3d 43, 44,553 N.E.2d 1354, 1355; State ex rel. Special Prosecutors v. Judges
(1978), 55 Ohio St.2d 94, 97, 378 N.E.2d 162, 164-165. The trial court's entry, during the pendency of this appeal, of an order granting Lemker a new trial would constitute an act "inconsistent with [this court's jurisdiction] to review, affirm, modify or reverse" the judgment of conviction from which this appeal has been perfected. It thus follows, from our conclusion that the court below had no jurisdiction to proceed upon the new-trial motion, that trial counsel cannot have violated an essential duty to Lemker by failing to prosecute the motion.
Having thus determined that the record before us does not manifest the error of which Lemker complains, we overrule the sixth assignment of error.
 V.
In his fifth assignment of error, Lemker challenges the trial court's imposition of prison sentences greater than the statutory minimum sentences and its order that the sentences imposed for attempted murder and felonious assault upon Fred Horn and for felonious assault upon Laran Williams be served consecutively. Specifically, he contends that neither the controlling sentencing provisions nor the evidence supported the imposition of consecutive sentences or terms of confinement greater than the statutory minimum. This challenge is well taken in part.
In the proceedings below, the trial court sentenced Lemker to eight years on count five, which charged him with the attempted murder of Horn, and to five years each on counts two, four, and six, which charged him with felonious assault upon Ericka, Laran, and Horn, respectively. The court then ordered that the sentences on counts four, five and six be served consecutively.
Lemker had not previously been imprisoned. That circumstance required the court to impose the shortest prison term authorized by statute, "unless the court [found] on the record that the shortest prison term [would] demean the seriousness of the offender's conduct or [would] not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B).
A sentencing court may also order that multiple prison terms be served consecutively, but only upon the following findings:
 "that the consecutive service is necessary to protect the public from future crime or to punish the offender"; and
 "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and
 either (a) that the offender committed the offenses while awaiting trial or sentencing, or while under a residential, nonresidential or financial sanction, see R.C. 2929.16 through 2929.18, or while under post-release control for a prior offense, or (b) that "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct," or (c) that the offender's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
See R.C. 2929.14(E)(4). If the court orders that multiple prison terms be served consecutively, the court must "make * * * finding[s] that give its reasons * * * for imposing the consecutive sentences * * *." See R.C. 2929.19(B)(2)(c).
An offender may challenge on appeal the imposition of any sentence that is "contrary to law." See R.C. 2953.08(A)(4). "[I]f the [appellate] court clearly and convincingly finds * * * [t]hat the record does not support the sentence * * * [or t]hat the sentence is otherwise contrary to law," the court may "increase, reduce, or otherwise modify" an appealable sentence or "vacate the sentence and remand the matter to the trial court for resentencing * * *." See R.C. 2953.08(G)(1)(a) and (d).
Attempted murder is a first-degree felony, for which Lemker was subject to a minimum term of confinement of three years. See R.C. 2923.02(E) and 2929.14(A)(1). Felonious assault is a second-degree felony, for which Lemker was subject to a minimum term of two years. See R.C. 2903.11(D) and 2929.14(A)(2).
The court, in the proceedings below, prepared and placed of record a worksheet memorializing its felony-sentencing findings. The felony-sentencing worksheet reflected the court's finding that the imposition of the shortest prison terms would "[d]emean the seriousness of the offense" and would "[n]ot adequately protect [the] public." The record before us provides an evidentiary basis for the court's findings. Thus, the imposition of sentences of confinement exceeding the statutory minimum sentences was neither contrary to law nor unsupported by the evidence. Accordingly, we overrule the fifth assignment of error to the extent of its challenge to the imposition of greater-than-the-minimum terms of confinement.
As to the matter of consecutive sentences, the trial court, at the sentencing hearing, expressly found that the harm caused by Lemker's offenses was "great [and] unusual," for the reason that Horn and Williams, who testified at the trial and spoke at sentencing, remained "trauma[tized]" by the events. The court recorded this finding on its felony-sentencing worksheet. The court also effectively found that "consecutive service is necessary to protect the public from future crime or to punish the offender," when it recorded on its worksheet its determination that "[c]onsecutives are necessary to fulfill the purpose[s] of R.C. 2929.11." See R.C. 2929.11(A) (which provides that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender"). The court failed, however, to state its reasons for this finding. Moreover, the court failed to provide the necessary "finding that gives its reasons" when it neglected to find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."[3] SeeState v. Edmonson (1999), 86 Ohio St.3d 324, 329, 715 N.E.2d 131, 135
(noting the "obvious" principle that "without the finding itself, the [sentencing] court also fails to provide the necessary `finding that gives its reasons'"). Thus, the court failed, contrary to R.C.2929.19(B)(2)(c), to "make * * * the finding[s] that give its reasons" for ordering, pursuant to R.C. 2929.14(E)(4), that the sentences of confinement imposed on counts four, five and six be served consecutively. See State v. Akins (Dec. 22, 2000), Hamilton App. Nos. C-000168, C-000169 and C000170, unreported (holding that, although the trial court made appropriate findings, the court did not satisfy the requirements of R.C. 2929.19(B)(2)(c) when it failed to state its reasons for imposing consecutive sentences).
We, therefore, hold that the trial court erred as a matter of law in imposing consecutive sentences. Accordingly, we sustain, in part, Lemker's fifth assignment of error, reverse the judgment of conviction to the extent that it imposes consecutive sentences, and remand this cause to the trial court for further proceedings consistent with law and this Decision. In all other respects, we affirm the judgment of the trial court.
Painter, P.J., Sundermann and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] Defense counsel waived Lemker's presence at the proceedings.
[2] For example, Crim.R. 33(B) permits a motion for a new trial on the ground of newly-discovered evidence to be filed either "within one hundred twenty days after the day upon which the verdict was rendered" or "within seven days from an order of the court finding that [the movant] was unavoidably prevented from discovering the evidence within the one hundred twenty day period." A new-trial motion filed on September 1, 1999, almost five months after the verdicts were returned, would not have satisfied the one-hundred-twenty-day requirement. Moreover, the record does not, as it cannot, demonstrate that Lemker's motion satisfied the alternative requirement that the motion be filed within seven days of securing a finding that he was unavoidably prevented from discovering the new evidence. Thus, even if we were to proceed upon the assumption that trial counsel filed a new-trial motion, the record would not permit a conclusion that the motion was timely.
[3] In State v. Cowperthwaite (Dec. 29, 2000), Hamilton App. No. C-000347, unreported, we noted that the felony-sentencing worksheet does not provide a space for the court to memorialize the necessary finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."