OPINION
Alexis G. Vaughn appeals the judgment of the Montgomery County Court of Common Pleas, whereby Vaughn was convicted of rape and kidnaping, sentenced accordingly, and found to be a sexual predator.
Vaughn was indicted by the Montgomery County Grand Jury on one count of rape by force or threat of force under R.C. 2907.02(A)(2), one count of attempted rape by force or threat of force under R.C. 2923.02(A), both with sexually violent predator specifications, one count of kidnaping, in violation of R.C. 2905.01(A)(4), with a sexual predator and a sexual motivation specification, and one count of intimidation of a crime victim under R.C. 2921.04(B). Vaughn pled not guilty and the case was tried before a jury on September 18, 2000.
At trial, it was determined that on June 21, 2000, Vaughn left work and arrived at Banana Joe's, a bar in the 100 block of East Third Street in Dayton, Ohio, at approximately 5:30 p.m. The victim, "I.C.," took a bus and arrived at Banana Joe's at approximately 10:30 p.m. During the course of the evening, as I.C. danced on a platform, Vaughn waved a creased dollar bill at her and offered to give it to her if she would grab it with her thighs. I.C. did not submit to Vaughn's request.
When the bar closed, I.C. missed her ride home. Having no money for a cab, she decided to walk home. About five blocks toward her home, as she was just about to cross Third Street, Vaughn ran up to her, placed his arm around her neck, and told her to come with him. She started to struggle in an effort to get away from him, but she quickly realized that she would be unable to escape him. Vaughn called her a "bitch" several times and threatened to kill her "and get away with it" if she resisted. He dragged her through the gravel lot of the Montgomery Paper Company to an area behind several parked semi-tractor trailer trucks. I.C. begged Vaughn not to hurt her and told him that she was pregnant. Vaughn ignored her, and told her "I'm not going to hurt you or your baby if you're good and you just do as you're told."
Vaughn tried, albeit unsuccessfully, to remove I.C.'s skorts[1] and panty hose. I.C. removed her skorts and panty hose after Vaughn choked her for not cooperating with him. Vaughn then made I.C. lie on her side with her back to him, but Vaughn was unable to penetrate her anally because he could not achieve an erection. With I.C. face down in the gravel, Vaughn forced her to reach behind her and help masturbate him. When I.C. turned her head, she spotted a broken beer bottle lying on the ground. She grabbed the bottle, but could not bring herself to use it on Vaughn. Vaughn discovered the bottle and took it from I.C., brushing it and all other debris out of her range. Vaughn told I.C. that he "likes women who fight back," but also stated "do you know if I kill you, if I killed you, how long your body would lay here?" Demanding an answer from her, I.C. sobbed "a long time" and Vaughn explained that he would simply "jump on the train tracks and no one [would] ever find [him]."Vaughn again directed I.C.'s hand behind her back to help masturbate him. When he achieved an erection, he attempted to penetrate her anally, but instead forced himself into her vaginally from behind. Vaughn forced I. C. to tell him that the act "felt good" and he stated "you haven't had a big anaconda for a long time; have you?" When she sobbed "no," he grabbed her hair and shoved her face into the gravel.
When Vaughn was finished, he stood up and instructed I.C. to not move or "try anything stupid like trying to run off." He instructed her to roll over and "put [her]self back together." He watched as I.C. dressed, and then instructed her to stand. He threatened her to "be a good girl and go home and keep this between [him] and [her] and not say anything to anyone."
Vaughn left the area and walked westbound on Third Street. An hysterical I.C. walked eastbound and flagged down the first car she saw. The driver stopped; I.C. entered the car. I.C. told the driver that she had just been raped, and he drove her to a nearby BP gas station to call for help. On their way they passed Vaughn, and upon recognizing him, I.C. ducked under the dashboard and again became hysterical. At the BP station, I.C. remained on the floor shaking, crying hysterically and vomiting, until the police arrived.
When Dayton Fire Department Paramedics Barry Cron and Larry Ables arrived at the BP station, I.C. was still sitting on the floor in a corner, curled up with her knees drawn up to her chest, shaking and crying. Her clothing was dirty and torn, and she appeared to have been "wrestling on the ground with somebody." Cron noticed that her panty hose were torn in several places "as if she was rolling around or being dragged on a stone surface."
I.C. was taken to Miami Valley Hospital, where they examined her and treated her for her injuries. A rape kit was completed by Carolyn Palmer, R.N. Palmer testified that she had found a mark on I.C.'s neck consistent with being grabbed. Palmer noted that I.C.'s lower left leg had exhibited "road rash," as the upper layers of skin had been scraped and the lower layers of skin had dirt embedded in them as to permanently stain the skin the color of the gravel. Palmer stated that these injuries had been consistent with being dragged on gravel. Palmer testified that I.C. had had a large abrasion on the back of her right thigh. She also had redness in the vaginal area, which was not inconsistent with someone who had just had sexual intercourse; there had been no tearing in the vaginal or anal areas.
Dayton Police Officer Jeffrey Holmes, who photographed I.C.'s injuries, also stated that I.C.'s "road rash" had been consistent with having been dragged across gravel or pavement. Officer Holmes identified the scene of the rape and located two empty beer bottles, one which was later found to have contained Vaughn's left fingerprint and partial left palm print.
Vaughn's version of events was somewhat different. He admitted to soliciting I.C. to try and grab a one hundred dollar bill out of his hands with her thighs. Vaughn stated that he had no further contact with I.C. until after Banana Joe's had closed, when I.C. had approached him and had asked him if he was the individual who had the one hundred dollar bill. When I.C. agreed to have sex with him for money, he showed her his "roll of money." Vaughn refused to pay for a hotel room, so the couple had consensual sexual intercourse in the lot by the Montgomery Paper Company, "in the back by the first trailer." Vaughn denied dragging I. C. through the parking lot. Afterwards, Vaughn gave I.C. the one hundred dollar bill, and the couple smoked a cigarette together. Vaughn claimed that at that point, he had told I.C. that he had been in prison and that he was a homosexual. I.C. walked away mumbling "I can't believe this, you a fag, you fag." The couple parted, walking down Third Street in opposite directions.
The jury found Vaughn guilty of the rape and kidnaping charges, but acquitted him of the attempted rape and intimidation charges. A sexually violent predator specification hearing was held, and Vaughn was found to be a sexual predator. He was sentenced to two consecutive terms of ten years to life imprisonment.
Vaughn now appeals, asserting four assignments of error.
 I.
The conviction was against the manifest weight of the evidence.
We note that in a weight of the evidence challenge, an appellate court:
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. While Thompkins explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded. We have explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges:
 Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, supra, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is.
State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. Mindful of these principles, we turn to the merits of Vaughn's argument.
In Vaughn's first manifest weight of the evidence claim, he argues that I.C.'s testimony was inconsistent. At trial, I.C. was unable to recall the exact denomination of the bill Vaughn had waved in front of her as she had danced on the platform at Banana Joe's. This contrasted to I. C.'s statement to Det. Wolford after the incident that Vaughn had flashed a one hundred dollar bill at her. We do not, however, see this as an inconsistency. To the contrary, we find it inconsequential that I.C. was unable to recall such a collateral fact at trial several months after the incident.
In Vaughn's second claim, he asserts that I.C. was at Banana Joe's looking to "earn" some money. He proposes that she was not working at the time, and that she had come to Banana Joe's to enter a "Bikini Contest" or a "Wet T-Shirt Contest." Vaughn further argues that this version of events lends credence to his assertions that I.C. approached him to "earn" the money. We find no substance in Vaughn's claim, as he provided no evidence at trial to support this theory. As such, we do not find this to be a "reasonable inference" from which we can determine that the jury clearly lost its way.
Similarly, we disregard Vaughn's third claim that I.C.'s story is not credible because instead of going to the hospital right after the incident, she got into a car and went to the BP station. The fact that she did not go "directly" to the hospital, but instead went first to the BP station, does not undermine her credibility in this instance, as she was dropped off at the BP station and then almost immediately taken to the hospital.
Vaughn's last claim in his manifest weight of the evidence argument is that I.C.'s version of events is incredible because her clothes were not torn. Vaughn has provided no evidence that forcible rape must result in torn undergarments. I.C.'s version of the facts provided a logical explanation for this, and the jury chose to believe her version of events.
In all four claims in this assignment of error, Vaughn makes the underlying argument that his convictions were against the manifest weight of the evidence because the jury based its determination solely upon I. C.'s account of the events. Vaughn and I.C. presented two separate and distinct stories of what occurred during the early morning hours of June 23, 2000.
I.C. testified that at approximately 2:45 a.m., after leaving Banana Joe's and walking towards her home, Vaughn ran up to her, placed his arm around her neck, and forcefully dragged her to the lot behind the trailers while threatening to kill her if she resisted. He then forced her to have intercourse against her will. Witnesses for the State testified that I.C. appeared to be quite traumatized after the incident. Palmer and Officer Holmes testified that I.C.'s "road rash" on her left leg was consistent with having been dragged through a gravel-covered lot.
Vaughn testified to a slightly different version of events. He stated that after Banana Joe's closed, I.C. approached him and the two struck a deal that he would give her one hundred dollars to have sex with him. Vaughn refused to pay for a hotel room, so they went behind a trailer and had "gentle" consensual sexual intercourse. Afterward, they smoked a cigarette together, and Vaughn told I.C. that he had spent time in prison and that he was a homosexual. Vaughn explained that this had upset I.C., and she walked away mumbling "I can't believe this, you a fag, you fag."
The verdicts reflect the jury's decision to credit I.C.'s testimony to a greater degree than it did Vaughn's. As we stated in Lawson, supra, this decision was within the peculiar competence of the jury because they had seen and heard both witnesses, and the determination in that regard is entitled to substantial deference by this court. See, also, State v.Sherrill (Jan. 28, 2000), Montgomery App. No. 17359, unreported. Furthermore, this court finds ample evidence in the record to support the jury's determination that I.C.'s testimony was credible, and that Vaughn's testimony was incredible.
Therefore, after reviewing the record, weighing the evidence and considering the credibility of the witnesses, it is clear that the jury's finding of guilty on the charges of rape and kidnaping were not against the manifest weight of the evidence.
Vaughn's first assignment of error is overruled.
 II.
The Defendant-Appellant's trial counsel was ineffective.
Vaughn argues that he received ineffective assistance of counsel at trial. Specifically, he asserts that his counsel was deficient in failing to adequately cross-examine Palmer regarding the lack of tearing in I.C.'s vaginal area, and in failing to request tests to determine if I.C.'s fingerprints were present on the beer bottle found at the crime scene.
To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Stricklandv. Washington (1984), 466 U.S. 668, 687. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time." State v. Cook
(1992), 65 Ohio St.3d 516, 524-25. Assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v. Bradley (1989), 42 Ohio St.3d 136, 142. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
In the first part of his assignment of error, Vaughn argues that trial counsel failed to inquire as to why there was no tearing in I.C.'s vaginal area resulting from the forcible rape. Vaughn, however, provided no evidence that a lack of tearing would establish that a rape had not occurred. We find that this could have been strategy by trial counsel, as Palmer could have testified that evidence of tearing was not necessary to physically prove that a rape had occurred. As such, we find that Vaughn presented no evidence that this failure was prejudicial to him, or that the failure was not simply the result of counsel's trial strategy.
Vaughn also asserts that his counsel was ineffective in failing to inquire whether I.C.'s fingerprints were present on the beer bottle, and in failing to request tests to determine the presence of I.C.'s fingerprints. We cannot find that the absence of I.C.'s fingerprints was definitive of Vaughn's guilt. I.C. testified that Vaughn had grabbed the beer bottle from her and threw it out of her reach. This would have been consistent with the finding of only Vaughn's palm and fingerprints on the bottle. On the other hand, had I.C.'s prints been located on the beer bottle, it would have further corroborated I.C.'s story that she had held the bottle at some point. Accordingly, Vaughn presented no evidence that trial counsel's failure was prejudicial to him, and we find that trial counsel's decision to not request prints or to inquire as to the lack of I.C.'s prints was sound trial strategy.
Based upon the above discussion, Vaughn's second assignment of error is overruled.
 III.
The trial court erred by allowing hearsay testimony be sic} admitted during the trial.
Vaughn contends that it was an "abuse of discretion" for the trial court to allow Palmer to testify to I.C.'s statements during her medical evaluation. In particular, Vaughn objects to the admission of testimony by Palmer that "there was a struggle involving the Complainant [I.C.], where she was grabbed from behind, she was grabbed from the neck, and she said that she was being dragged." (Tr. 195.) Vaughn argues that the repetition of this portion of I.C.'s story by Palmer inflamed the jury and prejudiced them against Vaughn.
The State asserts that the statements at issue are not hearsay and that they fall under Evid.R. 803(4), which governs the admissibility of hearsay declarations made for the purpose of securing medical treatment or diagnosis. We agree.
A hearsay statement made to a medical professional is admissible for its truth if the declarant made the statement "for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4); State v. Miller
(1988), 43 Ohio App.3d 44 . This exception is considered to be trustworthy based upon "the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements." Staff Notes to Evid.R. 803(4); State v. Clary (1991), 73 Ohio App.3d 42, 52. See, also,State v. Sanders (Nov. 15, 1995), Montgomery App. No. 13925, unreported. Furthermore, the underlying rationale for the exception is that a "declarant's motive is consistent with that of a patient seeking treatment" and that it is reasonable for a doctor to rely on such information when diagnosing and treating the declarant. Sanders, supra, citing Clary, supra, at 52.
In the instant case, I.C.'s statements to Palmer concerning the events on June 23, 2000 were clearly made for the purpose of medical diagnosis or treatment. Contrary to Vaughn's contention, the external cause of I. C.'s abrasions, in particular her neck injury and her "road rash," were reasonably pertinent to diagnosis or treatment. Furthermore, her statements to Palmer appear to be pertinent to assist Palmer and the doctors in assessing the physical and psychological abuse which she endured. Therefore, the trial court did not abuse its discretion in allowing the disputed evidence.
Accordingly, Vaughn's third assignment of error is overruled.
 IV.
In this unentitled assignment of error, Vaughn briefly contends that the State failed to notify him that Rosemary Federle, the psychotherapist who performed the sexual offender specific evaluation on Vaughn, was to be called as a witness at the sexual predator classification hearing. He further argues that "but for" Federle's testimony, he would not have been found to be a sexual predator, thus the trial court erred in permitting Federle's testimony.
We note that Vaughn failed to object at any time to Federle's presence on the witness stand. Absent plain error, the failure to object to her testimony constitutes waiver. Under Crim.R. 52(B), an alleged error such as this does not constitute plain error "unless the outcome of the trial would clearly have been different if the error had not occurred." Statev. Kersey (1997), 124 Ohio App.3d 513, 519.
Under Crim.R. 16(E)(3), it would not have been an abuse of discretion for the trial court to have permitted Federle to testify. When the State violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefitted the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced. State v. Scudder (1994), 71 Ohio St.3d 263, 269.
First, there is no evidence in the record before us to suggest that the prosecutor willfully violated the discovery rules. Second, Vaughn has not indicated how that foreknowledge would have benefitted him in the preparation of his defense. Vaughn participated in the evaluation performed by Federle and, more importantly, he failed to object to the admission of Federle's sexual offender specific evaluation at the hearing.
Third, Vaughn has failed to demonstrate how he was unfairly prejudiced. It has been held that it is not an abuse of discretion for a trial court to permit the testimony of a witness not included on a witness list where the defendant had failed to request a continuance, an opportunity to voir dire the witness, or even a recess before his cross and re-cross of the witness. State v. Weind (1977), 50 Ohio St.2d 224,234-235, 4 O.O.3d 413, vacated as to the death penalty, (1978),438 U.S. 911. In this case, Vaughn failed to object, failed to request a continuance or a recess, and failed to request an opportunity to voir dire the witness. In fact, Vaughn's trial counsel conducted a vigorous cross-examination of Federle. Consequently, it would not have been an abuse of discretion for the trial court to have permitted Federle to testify had Vaughn objected. For this reason, we do not find plain error in the admission of Federle's testimony.
Moreover, there was a continuing order for discovery in this case under Crim.R. 16(D). The State did not identify Federle's name on any of their written lists of witnesses. Federle's testimony described in detail her sexual offender specific evaluation, which was admitted as an exhibit at the hearing. Vaughn failed to object to either Federle's presence on the witness stand, the admission of her report, or the other exhibits at the sexual predator classification hearing. Based upon the contents of Federle's evaluation, the parole report, and Vaughn's prior criminal record, we cannot say that but for this error Vaughn would not have been found to be a sexual predator.
For these reasons, we do not find plain error in the trial court's permission of Federle to testify. Vaughn's fourth assignment of error is not well-taken.
Judgment of the trial court is affirmed.
WOLFF, P.J. and FAIN, J., concur.
[1] A skort is a combination of a skirt and a pair of shorts.