1724

Jean T. SHAKE, Appellant-Respondent v. DARLINGTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Anita L. Beasley, and Michael Clifton Weatherford, of whom Darlington County Department of Social Services is Respondent, and Anita L. Beasley is Respondent-Appellant. In re Michael Christopher WEATHERFORD, A minor under the age of seven (7) years. Appeal of Anita L. BEASLEY.

(410 S.E. (2d) 923)

Court of Appeals

*Joseph T. McElveen, Jr.,* and *Thomas M. Bultman* of *Bryan, Bahnmuller, King, Goldman & McElveen,* Sumter, *for appellant-respondent.*

*Frederick K. Jones,* Florence, *for respondent-appellant.*

*Susan L. Anderson,* Columbia, *for respondent.*

*Mary Anne Graham,* McBee, *guardian ad litem.*

Heard Sept. 17, 1991; Decided Nov. 12, 1991.

Rehearing Denied Dec. 5, 1991.

SHAW, Judge:

Appellant-foster mother, Jean T. Shake, commenced this action seeking termination of parental rights of the natural parents of Michael Christopher Weatherford and custody of the child. From an order of the family court denying termination of parental rights and granting custody of the child to respondent natural mother, Anita L. Beasley, Shake appeals.[1] We affirm in part and reverse in part.

Michael Christopher Weatherford was born to Anita and Michael Clifton Weatherford on December 16, 1985. Due to the child's failure to thrive, the natural parents voluntarily relinquished custody of him to D.S.S. on January 22, 1986 at which time he was placed in the care of Mrs. Shake. On May 16, 1986, Michael was returned to his natural parents, but on June 10, 1986, D.S.S. sought and procured an emergency protective custody order at which time he was placed back in the care of Mrs. Shake. Up until the time of the hearing on this matter on May 31, 1990, Michael had remained in the continuous care of Mrs. Shake.

On appeal, Mrs. Shake argues the trial judge erred in failing to terminate the parental rights of Mrs. Beasley pursuant to S.C. Code Ann. § 20-7-1572(1), (2), (4),

---

[1] The natural father has consented to the adoption of the child by Mrs. Shake and is not a party to this appeal.

and/or (6) (1976).[2] We disagree. The pertinent subsections to § 20-7-1572 allow the family court to terminate parental rights based on one or more of the following grounds:

(1) The child or another child in the home has been harmed as defined in § 20-7-490(C), and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months. In determining the likelihood that the home can be made safe, the parent's previous abuse or neglect of the child or another child in the home may be considered; or

(2) The child has been removed from the parent pursuant to § 20-7-736, has been out of the home for a period of six months, and despite a reasonable and meaningful effort by the agency to offer appropriate rehabilitative services, the parent has not remedied the conditions which caused the removal; or . . .

(4) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care when contribution has been requested by the custodian of the child. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means; or . . .

(6) The parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, mental deficiency, mental illness, or extreme physical incapacity, and the condition makes the parent unlikely to provide minimally acceptable care of the child.

It is well settled that the party seeking to terminate parental rights must show conditions warranting such action by clear and convincing evidence. *Richberg v. Dawson*, 278 S.C. 356,

---

[2] Although it is questionable whether Mrs. Shake properly raised each of these grounds for termination at trial, we nevertheless address them all.

296, S.E. (2d) 338 (1982); *Martin v. Ross*, 286 S.C. 43, 331 S.E. (2d) 785 (Ct. App. 1985).

The cause for removal of Michael from Mrs. Beasley's home on June 10, 1986 appears in the D.S.S. treatment plan as follows:

> The above minor was placed into the custody of the Department of Social Services due to threat of harm. [Mrs. Beasley], the child's mother, was exhibiting bizarre behavior. [Mrs. Beasley] was experiencing a situational crisis. Anita and her husband, Michael, were separated. [Mrs. Beasley] could not handle the pressure of a failing marriage. The emotional distress of the marriage led [Mrs. Beasley] to neglect her small baby. She at the time was not functioning as a mother. The child had been left unsupervised by the mother. [Mrs. Beasley] admitted to peeping in a trailer window at 3:00 A.M. She admitted to some extreme behaviors. It was also [Mrs. Beasley] that told worker [sic] about a hit man that was out to kill her and the baby. Also, [Mrs. Beasley] had decided to live on a mattress in her living room. It was a conglomeration of circumstances that led to the child being placed in foster care until the situational crisis could be cleared up.

Mrs. Shake contends Mrs. Beasley's parental rights should be terminated based on S.C. Code Ann. § 20-7-1572(1). However, the record before us does not contain clear and convincing evidence of either severe or repetitive abuse or neglect of Michael making it unlikely the home could be made safe for Michael within twelve months. While there is some mention in the record that D.S.S. became involved with Mrs. Beasley in regard to her oldest son and Michael's half-brother, Ronnie, there is no evidence Mrs. Beasley abused or neglected that child. Further, although an incident occurred in April of 1989 involving the apparent use of excessive corporal punishment on Michael by Mrs. Beasley's then current boyfriend, the record, again, does not contain clear and convincing evidence of severe or repetitive abuse or neglect such that the home could not be made safe within a twelve month period. Although the incident is disturbing, it appears to have occurred only once when the boyfriend spanked the child while Mrs. Beasley was out running errands.

Mrs. Shake also argues parental rights should be terminated pursuant to S.C. Code Ann. § 20-7-1572(2).

However, neither does the record contain clear and convincing evidence that Mrs. Beasley has failed to remedy the conditions which caused removal. The evidence on this issue is, at best, sketchy and is inadequate to meet the standard required to terminate parental rights. This case can be distinguished from the case of *D.S.S. v. Pritchett*, 296 S.C. 517, 374 S.E. (2d) 500 (Ct. App. 1988) in that, while there is evidence of an attempt by Mrs. Beasley to utilize rehabilitative services offered by D.S.S., it is unclear whether she has or has not, in fact, remedied the conditions causing removal. We note that the lack of clear evidence in this case is likely attributed to the fact that the burden of proof rested with the foster mother while D.S.S., the agency with access to the vital information, aligned itself with the natural mother.

As to whether Mrs. Beasley failed to support Michael for a period of six months, the evidence is likewise inadequate. Although Mrs. Beasley admitted missing eight of her $10 monthly payments, she testified she caught up all of the payments. Further, there is no indication of whether she missed eight consecutive payments or whether Mrs. Beasley was contributing in another manner during the time she missed these payments in light of the fact that she regularly exercised weekend visitation with Michael for some period of time. We find this evidence alone insufficient to terminate parental rights based on S.C. Code Ann. § 20-7-1572(4).

Mrs. Shake finally argues parental rights should be terminated pursuant to § 20-7-1572(6) based on Mrs. Beasley's emotional instability and possible personality disorder mentioned in her D.S.S. treatment plan. Although the evidence is unclear on whether Mrs. Beasley has adequately resolved her emotional problems, Mrs. Shake failed to present any expert evidence that Mrs. Beasley suffered from any diagnosable condition making it unlikely she could provide minimally acceptable care for Michael.

Alternatively, Mrs. Shake contends that, whether or not parental rights are terminated, custody of the child should have been granted to her instead of Mrs. Beasley. We agree. With regard to custody, our Supreme Court has stated the best interest of the child is the primary

and controlling consideration in *all* child custody controversies. *Moore v. Moore,* 300 S.C. 75, 386 S.E. (2d) 456 (1989). The court further noted that, while there is a presumption that it is in the best interest of a child to be in the custody of its biological parent, such a presumption is rebuttable. The court went on to list four specific factors to be considered in such an instance including (1) whether the parent can prove he or she is a fit parent, able to properly care for the child and provide a good home; (2) the amount of contact, in the form of visits, financial support or both, which the parent had with the child while in the care of a third party; (3) the circumstances under which temporary relinquishment occurred; and (4) the degree of attachment between the child and the temporary custodian. *Id.* 386 S.E. (2d) at 458.

Unlike the *Moore* case, in the case at bar, there is a legitimate dispute over Mrs. Beasley's fitness and ability to provide proper care and a good home for Michael. First, the record shows Mrs. Beasley has an unstable history with men. She was in a relationship with the father of her oldest child who was born out of wedlock. She later married Michael Clifton Weatherford, the father of the child in question, but divorced him sometime after Michael's birth and married Randy Beasley in March 1988. She separated from Beasley in November 1988 and divorced him in the spring of 1990. Further, doing her separation from Beasley, she admitted committing adultery with Donald Kazmark. She began seeing her purported fiancee, Randy Bush in February, 1990. Therefore, it is apparent that Mrs. Beasley has been in a serious relationship with at least four different men over a period of four years since Michael's birth in December, 1985. Secondly, the record indicates that, when exercising her weekend visitation, Mrs. Beasley would meet the D.S.S. worker at an apartment she was purportedly living in to pick up Michael and drop him off. However, she was, in fact, taking the child over to Randy Bush's trailer for the weekend. While Mrs. Beasley denied that she lived with Mr. Bush, she stated she had stayed with him frequently over a three month period prior to this hearing. A neighbor of Mr. Bush testified he had seen Mrs. Beasley at the trailer every day for the last four months, including evenings and mornings. The treatment plan devised by D.S.S. called for Mrs. Beasley to establish not only a suitable home, but one with a stable en-

vironment. Clearly Mrs. Beasley places greater priority on her desires than on her son's need for stability.

Mrs. Beasley's treatment plan also required that she complete mental health counseling. Again, the evidence is not clear on whether Mrs. Beasley did, in fact, complete counseling. During her testimony, Mrs. Beasley stated she had completed her treatment plan and had been discharged from counseling. Yet, she also admitted that she had terminated counseling on her own because she felt that she did not need it and that she could deal with her anger on her own by performing housework or fixing up the car. The D.S.S. caseworker, Betty Parrott, testified, and her records likewise indicate, Mrs. Beasley terminated counseling on her own and, although Mrs. Beasley signed another treatment plan on January 19, 1990 referring her back to mental health counseling, to the best of her knowledge, Mrs. Beasley had not returned. Her apparent cavalier attitude toward counseling brings into question her fitness as a parent.

Further, the record indicates that in April, 1989, while on visitation with Mrs. Beasley, Michael received severe bruises on his buttocks from a spanking administered by Mrs. Beasley's boyfriend at the time, Donald Kazmark. As a result, Mrs. Beasley's weekend visitation was temporarily terminated and she was ordered not to exercise visitation in the presence of Kazmark. However, the record shows Mrs. Beasley continued to expose the child to this man. While this incident is inadequate to terminate Mrs. Beasley's parental rights under the statute, we find her actions and attitude of indifference reflect poorly on her fitness as a parent.

Of the remaining factors to be considered, we find it important to note that Michael was removed from Mrs. Beasley by means of an emergency protective order due to threat of harm. We further note that the evidence of attachment between Michael and the foster mother is overwhelming. Karen Zimmerman, a therapist and counselor who met with Michael and Mrs. Shake, testified that Mrs. Shake has provided stability, consistency, structure, discipline and trust for Michael, that Michael has bonded with Mrs. Shake and removal from Mrs. Shake's care would be very traumatic for Michael. The caseworker, Betty Parrott, testified there was no question Michael has bonded with Mrs. Shake and Mrs. Shake is an exemplary mother. Even Mrs. Beasley herself admits it would

have a "devastating effect" on Michael if Mrs. Shake is not given custody.

Considering the record before us as a whole, we find the evidence is overwhelming that the best interest of Michael is served by granting custody to Mrs. Shake. While the evidence is inadequate to terminate Mrs. Beasley's parental rights based on our statutory guidelines, it is more than adequate to meet the criteria of the *Moore* case to overcome the presumption that the best interest of the child is served by granting custody to the biological parent. Accordingly, the order of the family court is affirmed as to the termination of parental rights issue but reversed as to custody. The foster mother Jean T. Shake, is hereby awarded custody of the minor Michael Christopher Weatherford.

Affirmed in part and reversed in part.

BELL and CURETON, JJ, concur.