612 So.2d 1381 (1992)
William Russell PETTIT, Appellant,
v.
STATE of Florida, Appellee.
No. 91-02022.
District Court of Appeal of Florida, Second District.
December 11, 1992.
James Marion Moorman, Public Defender, Bartow, and Richard J. Sanders, Sp. Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Stephen A. Baker, Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
William Russell Pettit seeks review of his convictions for sexual battery, residential burglary, armed robbery, and battery. The state cross appeals the judge's order *1382 precluding the state's introduction of DNA evidence at trial.[1]
We first address the state's cross appeal. As will be explained below, a retrial in this case may be required based on a trial court ruling which Pettit has challenged. For that reason, it is necessary that we address this order excluding state evidence. In a pretrial order which precluded the state from presenting DNA evidence at trial, the trial court ruled that Lifecodes, the private company which did the DNA testing for the state, had provided insufficient discovery to the defense and that the materials provided did not allow the defense to conduct its own analysis to evaluate Lifecodes' testing procedures and conclusions. The court also ruled that the state did not provide some of the materials in a timely manner.
There were four areas of contention. First, the defendant argued that he received the protocol late. This fact is disputed; however, even if the trial court believed that the defendant received the protocol late, exclusion of the evidence was too harsh of a remedy. See Wilkerson v. State, 461 So.2d 1376 (Fla. 1st DCA 1985). The trial court's order also mentioned that Lifecodes required the defense attorney to sign a confidentiality agreement before it released the protocol. Defense counsel without prior objection did sign the confidentiality agreement and received the protocol. Based on these circumstances, the precondition of the execution of a confidentiality agreement cannot be used to preclude the state's use of the DNA evidence. The second area involved copies of photographs of the sizing gels. Pettit claimed that Lifecodes did not provide him the gel analysis for the bedsheet sample. The Lifecodes' witness testified that Lifecodes had turned over all photographs. Lifecodes cannot be required to create a particular document for the defense. See Ezzell v. State, 88 So.2d 280 (Fla. 1956). Pettit then complained that the set of autoradiographs was not marked with its standards. The witness for Lifecodes testified that Lifecodes does not mark the values on the autoradiographs. Again Lifecodes cannot be compelled to create a document for the defendant. See Ezzell. Finally, Pettit requested copies of the scientific journals upon which Lifecodes relied. There is some conflict in the record regarding whether Lifecodes did provide these articles. Even if Lifecodes did not, the state does not have to produce things that are as readily available to the defense as to the state. See State v. Gillespie, 227 So.2d 550 (Fla. 2d DCA 1969).
Lifecodes' witness testified that it turned over everything Lifecodes had on the testing of Pettit. Pettit argued that Lifecodes' procedures were inadequate if that was all of the documentation of Pettit that it had. Defense counsel argued at great length that courts in at least two other states found Lifecodes' procedures severely lacking. Based on Lifecodes' witness's representation that it produced all documentation, Pettit may make this argument in support of his motions to exclude the DNA evidence which challenged the per se admissibility of DNA evidence and the propriety of Lifecodes' methods in obtaining the results in Pettit's case. The trial court specifically mentioned in the challenged order that he was not considering the merits of the motion but excluding the evidence only because of the inadequate production. We conclude that this was an abuse of discretion and reverse this trial court order without prejudice to the defense to pursue its motions to exclude the DNA evidence on other grounds.
Turning to the rulings at trial, we find additional error. Defense counsel wanted Pettit to show the jury his tattooed forearms. The trial court ruled that he would be able to do this; however, Pettit would be subject to cross examination, including questions regarding his felony convictions. Defense counsel advised the trial judge that he would not put on the demonstrative evidence of the tattoos only because of this ruling.
The trial court's ruling was error. A display of the defendant's forearms would *1383 have been nontestimonial in nature and would not subject the defendant to cross examination. See Smith v. State, 574 So.2d 1195, 1196 n. 3 (Fla. 3d DCA 1991); see also U.S. v. Bay, 762 F.2d 1314 (9th Cir.1984). It cannot be said that this error was harmless because the jury had a very difficult time reaching a verdict in this case, at one time reporting to the judge that they were hopelessly deadlocked. If Pettit could have displayed his forearms and if defense counsel could have argued to the jury that the witness surely would have noticed the tattoos, we cannot state beyond a reasonable doubt that the balance would not have tipped in the defendant's favor. The state argues that it was harmless error in that the victim did testify that her assailant had "some blotches" on his arms. This, however, should have been an argument to the jury regarding the significance of the evidence.
We remand this case to the trial court for the taking of further evidence regarding a foundation as to whether Pettit had the tattoos at the time he allegedly committed the crime. See Bay. If the defense provides a sufficient foundation, then Pettit is entitled to a new trial. If Pettit is unable to produce this evidence, then his convictions should be affirmed.
One additional issue which Pettit has raised, although ordinarily reversible error, is not reversible in this case because of Pettit's attorney's participation in this error. We address it in this opinion in the event a new trial is ordered in this case. On the first day of deliberations the trial court gave the jury written copies of the reasonable doubt instruction, which they took back to their deliberations. On the second day of deliberations the trial court gave the jury written copies of the instructions defining the elements of the offenses. These written instructions included the judge's handwritten notes and bracketed material which was not read to the jury. It was error for the trial court to give the jury only some of the written instructions. Fla.R.Crim.P. 3.400(c); Zarattini v. State, 571 So.2d 553 (Fla. 4th DCA 1990). In this case, however, the error was invited. The state objected to the judge giving the jury only some of the written instructions, saying that it "is not normally appropriate." Defense counsel, however, stated the following: "I certainly have no objection if they want to read it four or five times." Then the court asked if defense counsel had an objection, and defense counsel stated, "Absolutely not, that is the way the law is." On the second day defense counsel stated that he had no objection to the jury receiving the written instructions on the elements of the offenses. Under these circumstances, it was not reversible error.
In the state's cross appeal, we reverse the trial court's order. We also remand this case for an evidentiary hearing regarding whether Pettit's arms contained tattoos when the crime was committed and direct that the trial court thereafter either affirm Pettit's convictions or grant him a new trial.
THREADGILL, Acting C.J., and BLUE, J., concur.
NOTES
[1] Judge David Seth Walker entered the pretrial order which the state appeals. Judge Robert E. Beach conducted the trial.