628 S.E.2d 482

**The STATE, Respondent,**

v.

**Kevin COVERT, Appellant.**

No. 4071.

Court of Appeals of South Carolina.

Heard Nov. 7, 2005.
Decided Jan. 17, 2006.
Rehearing Denied April 5, 2006.

190

Katherine Carruth Link, of West Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Office of the Attorney General, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

SHORT, J.:

Kevin Covert appeals his convictions for possession with intent to distribute cocaine in proximity of a school and trafficking in cocaine. Covert argues the trial court erred by denying his motion to suppress evidence due to a defective search warrant, allowing improper closing arguments, and using an unusual verdict form. We reverse and remand.

## FACTS

Kevin Covert, Charles Henderson, and others were present in Covert's house in Greenville County when police searched it on September 26, 2002. When the officers entered the house they found Henderson in the living room with a coffee grinder containing a white powder substance, small plastic bags of white powered substance, a cutting agent, sifting instruments, and an electronic scale, all in front of him on a coffee table. A cell phone box on the couch next to him contained a large plastic bag of cocaine, weighing 441.50 grams. Cocaine, weighing 22.89 grams, was found on the coffee table. Two smaller quantities of cocaine, weighing 6.47 grams and 1.62 grams, were also recovered. Police also found $1,950 on the

floor in front of the couch.  Additionally, police found a pistol on a bookshelf.  Henderson was the only person in the living room.  Covert was found in a bedroom on the other side of the house.  A holster for a gun, a 9–mm. magazine, and several dozen rounds of ammunition were found in an adjacent bedroom that belonged to Henderson.

All the individuals in the house were arrested and charged with trafficking in cocaine.  However, Covert and Henderson were also charged with possession of a weapon during the commission of a violent crime.  Donald Myers and Roger Harris, both charged with trafficking, pled guilty to simple possession and were to receive suspended sentences in exchange for testifying for the State.  Myers testified he purchased cocaine from Covert and Henderson at the house numerous times.  Myers stated his purchases usually amounted to between one hundred and two hundred dollars each for between one and three-quarters grams and three and one-half grams of cocaine.  Myers also testified he had seen both Covert and Henderson bagging cocaine.  On September 26, Myers was at the house to purchase cocaine from Covert.

Harris also testified he had purchased cocaine from Covert and Henderson at their house at least twice a week for the previous two years.  Harris stated Henderson sometimes delivered cocaine to his house.  Harris further testified that on the morning of September 26, Covert asked him to give him a ride to Atlanta.  Harris testified they drove to a bar in Atlanta where Covert met another individual.  Covert asked for Harris's "electronic door opener."  Covert returned about thirty minutes later and they drove back to Greenville.  Although the State attempted to establish that Harris drove Covert to Atlanta to obtain over 400 grams of cocaine, Harris did not see any cocaine during the trip.

After his arrest, Covert gave a statement to the police and admitted he purchased cocaine in Atlanta on September 26.  Covert's statement identifies his connection in Atlanta and details the activities of the trip.  Covert did not testify at trial.  On Henderson's motion, Covert's statement was redacted to remove all references to Henderson and the edited version was read into the record.  Covert was tried together with his co-defendant, Henderson, and convicted of both charges.  Co-

vert was sentenced to concurrent sentences of 25 years for the trafficking charge and 10 years for the distribution charge. Covert now appeals.

## LAW/ANALYSIS

### I. Suppression of Evidence

Covert contends the trial judge erred by denying his motion to suppress evidence and by applying a good faith exception to the statutory warrant requirement because the warrant was defective. We agree.

In criminal cases, an appellate court reviews errors of law only and is bound by factual findings of the trial court unless clearly erroneous. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). "A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error that results in prejudice to the defendant." *State v. Adams*, 354 S.C. 361, 377, 580 S.E.2d 785, 793 (Ct.App.2003).

During the trial, Covert and Henderson moved to suppress evidence seized during the search on the basis that although the search was conducted on September 26, 2002, the magistrate's signature is dated September 28, 2002 on the warrant itself. The magistrate's signature and the date of September 26, 2002 only appear on two separate pages of the affidavit. During the trial, Detective Timothy Conroy testified that he did not see the magistrate sign the search warrant on the 26th and that "most probably she didn't sign that night and that was brought back to her on some other occasion to sign." Upon finding the warrant was defective under section 17–13–140 of the South Carolina Code (2003), the trial judge ruled a good faith exception to the Fourth Amendment's exclusionary rule should apply to South Carolina's statutory warrant requirement and denied the motion to suppress all evidence obtained during the September 26 search.

First, we must determine whether the warrant was defective because the signature was dated two days after the search was conducted. Section 17–13–140 of the South Carolina Code (2003) states that a warrant shall be "issued only upon affidavit sworn to before the magistrate, municipal judi-

cial officer, or judge of a court of record establishing the grounds for the warrant." Though the statute does not specifically require that the warrant be signed, it requires that it be "issued." In *Davis v. Sanders,* 40 S.C. 507, 19 S.E. 138 (1894), "[our supreme] court held that the warrant was not 'issued' as required by law, and conferred no authority on the sheriff to make the arrest, because the magistrate did not sign at the foot as he intended to do, and because he did not intend the indorsement on the back as his signature of the warrant." *Du Bose v. Du Bose,* 90 S.C. 87, 90, 72 S.E. 645, 646 (1911). Therefore, a warrant is not issued until signed by an appropriate magistrate, municipal judicial officer, or judge of a court of record. *See* 77–370 S.C. Op. Att'y Gen. 295 (1977) (stating a warrant is properly issued only when signed by the magistrate and only upon a sworn affidavit). Thus, the warrant in this case was defective because there was no evidence that the magistrate signed the warrant before the search was conducted and the signature on the warrant is dated two days after the search was conducted.

■ Courts of other states have also held a search warrant must be signed because it is the confirmation that the magistrate determined the facts asserted in the affidavit support a finding of probable cause.[1] In *State v. Surowiecki,* 184 Conn. 95, 440 A.2d 798, 799 (1981), the Connecticut Supreme Court held that a warrant is not "issued" without a lawful signature on the search warrant by the person authorized to issue it. The court reached this conclusion even though there was no doubt the judge intended to sign the search warrant and failed to do so because of a "mere oversight." *Id.* at 798. There are also several public policy considerations to support a requirement that the warrant be signed prior to a search: it impresses upon the magistrate the importance of his action in issuing a warrant; it discourages police misconduct by dictating that officers can not reasonably rely on an unsigned

---

1. Courts in other states have made the same determination: *Kelley v. State,* 55 Ala.App. 402, 316 So.2d 233 (Crim.App.1975); *Martin v. State,* 344 So.2d 248 (Fla.Dist.Ct.App.1976); *Byrd v. Commonwealth,* 261 S.W.2d 437 (Ky.Ct.App.1953); *United States v. Carignan,* 286 F.Supp. 284 (Mass.Dist.Ct.1967); *People v. Hentkowski,* 154 Mich.App. 171, 397 N.W.2d 255 (1986); *State v. Fleming,* 240 Mo.App. 1208, 227 S.W.2d 106 (1950); *State v. Williams,* 57 Ohio St.3d 24, 565 N.E.2d 563 (1991); *State v. Cochrane,* 84 S.D. 527, 173 N.W.2d 495 (S.D.1970).

document as an authorization for conducting a search and by requiring officers to take corrective measures before they conduct a search; and it provides needed protections and assurances to persons in control of the property to be searched that the search has been authorized. *State v. Hentkowski,* 154 Mich.App. 171, 397 N.W.2d 255, 258 (1986).

■■ Having found the warrant was defective because the signature was dated two days after the search was conducted, we must next determine whether the good faith exception to the Fourth Amendment's exclusionary rule should apply to South Carolina's statutory warrant requirement. The trial judge allowed the introduction of the evidence seized pursuant to a good faith exception as adopted by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* rule applies when a search warrant is defective on Fourth Amendment grounds. *Id.* However, in this case, the evidence Covert sought to have excluded was obtained because of a defective search warrant based on a state statutory violation, not a constitutional violation.

■ In South Carolina, the statutory warrant requirement is separate and distinct from the prohibition in the federal and state constitutions against unreasonable searches and seizures. S.C.Code Ann. 17–13–140 (2003); *see* U.S. Const. amend. IV; S.C. Const. art. I, 10. In fact, as the South Carolina Supreme Court has recognized, section 17–13–140 of the South Carolina Code actually imposes stricter warrant requirements than the constitutional provisions. *See State v. Jones,* 342 S.C. 121, 128, 536 S.E.2d 675, 678 (2000). Therefore, the *Leon* good faith exception is not applicable to this case and we must determine whether there is a good faith exception to the statutory warrant requirement in South Carolina.

In *State v. Sachs,* 264 S.C. 541, 559, 216 S.E.2d 501, 510 (1975), the Supreme Court of South Carolina found a good faith exception permits the introduction of evidence seized pursuant to a warrant that is defective under section 17–13–140 of the South Carolina Code if the officers have made a good faith attempt to comply with the affidavit requirement. In *Sachs,* the affidavit the officers relied on contained misstated facts; however, the court determined that such misstate-

ments in an affidavit were "necessary hazards" encountered when federal and state authorities search in a joint effort and the affidavit satisfied a good-faith attempt to comply with the statute relating to search warrants. *Id.*

In *State v. McKnight*, 291 S.C. 110, 112–13, 352 S.E.2d 471, 472 (1987), the officers orally recited the facts upon which the warrant was based, but no affidavit was ever executed. As a result, the court found that there was no good faith effort to comply with the statute; however, the court declined to decide whether there is a good faith exception for officers who execute a search with objectively reasonable reliance on a warrant that is ultimately found to be invalid. *Id.* at 114, 352 S.E.2d at 473. The instant case falls somewhere between the cases of *McKnight* and *Sachs.* This is not a case of the "necessary hazards" of obtaining a warrant as in the case of *Sachs* and it is not a failure to comply with the statutory warrant requirement as in *McKnight.* Here, the officers failed to notice that either the magistrate did not sign the warrant on September 26 or that the signature on the warrant itself was misdated as September 28, while the search was conducted on September 26, 2002.[2] The officers could have discovered either error by simply looking at the warrant itself; therefore, we find there was no good faith effort to comply with the statute.

Because we find the warrant was defective and the good faith exception to the warrant requirement does not apply in this case, we must finally determine if the admission of the evidence found with the defective warrant constituted harmless error. "Error is harmless where it could not reasonably have affected the result of the trial." *State v. Reeves*, 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990). Generally, appellate courts will not set aside convictions due to insubstantial error not affecting the result. *State v. Davis*, 364 S.C. 364, 409, 613 S.E.2d 760, 784 (Ct.App.2005). The violation found in this case cannot be seen as harmless error because exclusion of the evidence could have reasonably affected the

**2.** The State did not offer any evidence that the magistrate signed the warrant on September 26, 2002, and the magistrate did not testify at trial.

result of the trial and the issue of the amount of cocaine allegedly possessed by Covert was a central issue in this case.

## II. Trafficking Statute

■■ Covert claims the judge erred by submitting the actual text of the trafficking statute to the jury in written form. We agree.

This is a novel question of law in South Carolina; however, historically, as a common practice, trial judges in South Carolina have not given the actual text of a statute in written form to a jury. The Court of Appeals of New York has ruled that the "consent of defense counsel is an 'absolute precondition' to furnishing the jury with the text of a statute because 'questions may arise concerning which sections of pertinent statutory material should be given to the jury.'" *People v. Sanders,* 70 N.Y.2d 837, 838, 523 N.Y.S.2d 444, 517 N.E.2d 1330 (1987) (citations omitted). Therefore, we find that the judge's submission of the actual text of the statute was in error because Covert's counsel did not consent to it being given to the jury.

**REVERSED AND REMANDED.**

ANDERSON, J., concurs in a separate opinion.
GOOLSBY, J., dissents in a separate opinion.

ANDERSON, J., (concurring in a separate opinion):

I **VOTE** to reverse the conviction and sentence of the appellant and to remand for a new trial because of the egregious error committed by the circuit judge in submitting a copy of the trafficking statute to the trial jury.

### *PRESERVATION OF ERROR*

After the circuit judge charged the jury and sent them back to the jury room to begin deliberations, the judge asked whether there were any exceptions from the State or the defense.

**Mr. Warder [counsel for Covert]: Yes, sir. It's the procedure I'm beginning to object to. We've now sent the jury out with a statute that provides—**
**The Court: Did they—**

**Mr. Warder:**—four ways to—

**The Court:** I meant to take up all those papers. Go get those papers from them. Every paper I gave them. Sir, go ahead.

**Mr. Warder:** Yes, sir. **We have a verdict form that in essence breaks the statute down in parts.** *And, of course, for trafficking it gives them four different choices, all to find him guilty.* **You know, I figure if we gave everybody enough choices, if we broke it down long enough we could have fifteen or twenty ways to find somebody guilty. And I just think that's highly prejudicial.**

**You know,** *I'd really like to send a sheet out that had the presumption of innocence, and the burden of proof, and have it all broken down in one line sentences so they could read through and check, do you find that on each of them?* **I mean,** *it's a way of highlighting the case to make it more likely that somebody will sooner or later check a yes.* **And it seems to me that it's highly prejudicial.**

**It seems to me like the form in itself tends to keep going until there's a high probability that somebody will think they're supposed to find one of the four.** *They have four things, and they're asked for an amount four times. And I think that the jury's going to think that they're supposed to fill one of them in and write an amount in.* **And I just—I just think it's prejudicial.**

**Mr. Abdalla:** Your honor, I'd like to be heard on that. My position is I'd just rather have the indictment sent back as is with the way we've—I've always thought it was guilty or not guilty. And that's just my position, your honor.

**The Court:** Well, we can't do that because the jury has to determine the amount. So we can't just send the indictments in. *I note your exceptions.* I don't think by splitting it out into four is doing anything but making it easier for the jury to understand. They're going to still have every bit of it. And in a case like this, I can't conceive a jury deliberating without having a copy of the statute. It's very frequently that a copy of the statute is sent back in, or some portion of the charge that they request be in writing, or sometimes the entire charge is sent back in writing.

**Mr. Warder:** *You know, I've heard of the entire charge being sent, but I've never heard of a court selecting the parts that they want to send back so it would be emphasized.* **And I—**

**The Court:** Well, I've explained to them it's not that I'm emphasizing, it's trying to help them understand.

**Mr. Warder;** **I understand, but that's—**

**The Court:** Now I don't bring them back—I don't object to bringing them back out and telling them that, you know, they can't find them guilty of anything unless the State has proven that particular charge beyond a reasonable doubt. But I don't see how there can be any doubt in their minds of that fact.

**Mr. Abdalla:** And, your honor, just for the record, I've joined in on Mr. Warder's objections.

**The Court:** All right. **Well, it seems** *the verdict form doesn't suit anybody but me.* **But that's the way it's going back.** I'm going to make the couple of corrections that we made at the bench a few minutes ago and that I explained to the jury while I was going through it. And then I'll let you gentlemen look at it to be sure we've done that before I send it back. And then I'll have it sent back. So we'll be at ease a few minutes.

(Whereupon court was in recess)

**The Court:** All right. I have made the changes that we talked about to the verdict form. If either one of you want to look at it the bailiff has it. Mr. Warder, the jury has already asked that I send into them the definition of the trafficking statute, the print form.

**Mr. Warder:** **Well, I mean—**

**The Court:** *And I note your objection.*

**Mr. Warder:**—it's predictable when we took it all to them.

**The Court:** Well, it's—I think it's proper. I think it's good. I think it would be worse not to do it than to do it. *So I overrule your objection.*

"The general rule of issue preservation states that if an issue was not raised and ruled upon below, it will not be considered for the first time on appeal." *State v. Passmore,* 363 S.C. 568, 583, 611 S.E.2d 273, 281 (Ct.App.2005) (citing

*State v. Dunbar,* 356 S.C. 138, 587 S.E.2d 691 (2003); *State v. Lee,* 350 S.C. 125, 564 S.E.2d 372 (Ct.App.2002)). Our courts have "consistently refused to apply the plain error rule." *Jackson v. Speed,* 326 S.C. 289, 306, 486 S.E.2d 750, 759 (1997) (citations omitted). Instead, we have held: "it is the responsibility of counsel to preserve issues for appellate review." *Id.*

Our supreme court, in *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000), explained the rationale behind this longstanding rule:

> Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments. The requirement also serves as a keen incentive for a party to prepare a case thoroughly. It prevents a party from keeping an ace card up his sleeve—intentionally or by chance— in the hope that an appellate court will accept that ace card and, via a reversal, give him another opportunity to prove his case.

*Id.* at 422, 526 S.E.2d at 724 (citations omitted); *see also Ellie, Inc. v. Miccichi,* 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct.App. 2004) ("Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error.").

The rule that an unpreserved issue will not be considered on appeal does have its exceptions. Foremost is the axiomatic principle of law that lack of subject matter jurisdiction may be raised at anytime, including for the first time on appeal. *Carter v. State,* 329 S.C. 355, 495 S.E.2d 773 (1998); *State v. Richburg,* 304 S.C. 162, 403 S.E.2d 315 (1991). Additionally, an exception exists where the interests of minors or incompetents are involved. *See Shake v. Darlington County Dep't of Soc. Servs.,* 306 S.C. 216, 219 n. 2, 410 S.E.2d 923, 924 n. 2 (Ct.App.1991) (noting, in a termination of parental rights action, that "[a]lthough it is questionable whether Mrs. Shake properly raised each of [the] grounds for termination at trial, we nevertheless address them all."); *Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 536 S.E.2d 372 (2000) (approving the court of appeals' conclusion that procedural rules are subservient to the court's duty to zealously guard the rights of minors); *Caughman v. Caughman,* 247 S.C. 104, 109, 146

S.E.2d 93, 95 (1965) (holding that "the duty to protect the rights of incompetents has precedence over procedural rules otherwise limiting the scope of review.").

Furthermore, our courts have developed the doctrine of futility, which recognizes that in circumstances where it would be futile to raise an objection to the trial judge, failure to raise the objection will be excused. *See State v. Pace*, 316 S.C. 71, 74, 447 S.E.2d 186, 187 (1994) (finding "[a]s to counsel's failure to raise an objection, the tone and tenor of the trial judge's remarks concerning her gender and conduct were such that any objection would have been futile."); *State v. Higgenbottom*, 344 S.C. 11, 542 S.E.2d 718 (2001) (employing the futility doctrine).

In the present case, counsel for Covert perspicuously raised an objection (1) to the submission of the statute to the jury and (2) to the lack of a "not guilty" option on the jury verdict form. As to the judge providing the jury with a written copy of the statute, counsel professed, "We've now sent the jury out with a statute," before his argument was interrupted by the court. Counsel noted he had "never heard of a court selecting the parts that they want to send back so it would be emphasized," and averred, "You know, I'd really like to send a sheet out that had the presumption of innocence, and the burden of proof, and have it all broken down in one line sentences so they could read through and check, do you find that on each of them?"

Additionally, Covert's attorney took exception to the jury verdict form's failure to provide for the option of "not guilty": "You know, I figure if we gave everybody enough choices, if we broke it down long enough we could have fifteen or twenty ways to find somebody guilty. And I just think that's highly prejudicial."

Lucidly, a contextual reading of the trial record demonstrates Covert's attorney timely objected both to the format of the jury verdict form and to the procedure of providing the jury with the trafficking statute. The circuit judge acknowledged: "I note your exceptions," and again, ". . . I note your objection." Further, the judge observed, "Well, it seems the verdict form doesn't suit anybody but me. But that's the way it's going back." Finally, he pronounced: "So I overrule your

objection." Pursuant to Rule 18 of the South Carolina Rules of Criminal Procedure, "Counsel shall not attempt to further argue any matter after he has been heard and ruling of the court has been pronounced." Rule 18(a), SCRCrimP. My reading of the transcript leads me to the ineluctable conclusions that (1) counsel raised multiple objections to the jury verdict form and the submission of the statute, and (2) the court acknowledged and overruled the objections. Therefore, both objections are pristinely preserved.

## *PREJUDICIAL SUBMISSION OF THE TRAFFICKING STATUTE TO THE JURY*

Historically in South Carolina jurisprudence, circuit judges have *NOT* submitted in writing to the trial jury any portion of the jury charge. The circuit judge committed a colossal prejudicial error in the instant case by submitting only the trafficking statute. This practice defies fairness and justice by emphasizing the offense while ignoring the basic constitutional guarantees afforded the defendant which were in the jury charge, including: (1) the presumption of innocence; (2) the burden of proof beyond a reasonable doubt; (3) the credibility of witnesses; (4) an elemental analysis of the actual charge of which the defendant is accused; and (5) the right not to testify. In my judgment, submitting the statute to the jury violated Covert's right to a fair trial.

Admittedly, some states permit a judge to submit the jury charge to the fact finder for purposes of edification and enlightenment during jury deliberations. Most of the states that allow this procedure do so through a court rule or statute.

Under Louisiana law, after a court charges the jury, "a copy of the written charge shall be delivered to the jury if such delivery is consented to by both the defendant and the state in open court but not in the presence of the jury." LSA–C.Cr.P. Art. 801(B)(1). However, "No charge shall be reduced to writing at the request of a juror pursuant to this Article unless consent is obtained from both the defendant and the state in open court but not within the presence of the jury." LSA–C.Cr.P. Art. 808. *See State v. Joseph,* 875 So.2d 1011, 1016–17 (La.App. 5 Cir.2004) ("With the 2001 amendments to LSA–C.Cr.P. arts. 801 and 808, it is now statutorily permissi-

ble for the jury to receive a copy of the written jury instructions to use during deliberations. However, the use is clearly conditioned upon the consent of the parties.").

In Alabama,

Neither a copy of the charges against the defendant nor the "given" written instructions shall go to the jury room; provided, however, that the court may, in its discretion, submit the written charges to the jury in a complex case.

Alabama RCRP Rule 21.1. *See Wright v. State,* 740 So.2d 1147 (Ala.Crim.App.1999).

The Ohio Rules of Criminal Procedure require that written instructions be provided to the jury. "The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instruction to the jury for use during deliberations, and preserve those instructions for the record." Ohio Crim. R. Rule 30(A); *see State v. Kersey,* 124 Ohio App.3d 513, 706 N.E.2d 818 (1997).

Under the West Virginia Rules of Criminal Procedure, "The court may show the written instructions to the jury and permit the jury to take the written instructions to the jury room." W.Va.Rules of Cr. P. 30; *see State v. Lutz,* 183 W.Va. 234, 395 S.E.2d 478 (1988).

The law in Arkansas is succinctly declared by that state's supreme court in *Oliver v. State,* 286 Ark. 198, 691 S.W.2d 842 (1985): "A.R.Cr.P. Rule 33.3 clearly states it is the duty of the judge to deliver to the jury a typewritten copy of the oral instructions. This is to be done upon the request of either party or any juror." *Id.* at 842.

The California Penal Code provides:

Upon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions. The court may, at its discretion, provide the jury with a copy of the written instructions given. However, if the jury requests the court to supply a copy of the written instructions, the court shall supply the jury with a copy.

Cal.Penal Code § 1093(f) (West 2004).

The rule in Minnesota is:

(4) *Giving of Instructions.* The court in its discretion shall instruct the jury either before or after the arguments are completed except, at the discretion of the court, preliminary instructions need not be repeated. The instructions may be in writing and in the discretion of the court a copy may be taken to the jury room when the jury retires for deliberation.

Rules Crim. Proc., rule 26.03, subd. 18(4), 27A M.S.A.

Unlike Louisiana, Alabama, Ohio, West Virginia, Arkansas, California, and Minnesota, there is no court rule or statute in South Carolina which gives a judge the discretion to submit to the jury written copies the charge. My research reveals no case from the appellate entities in South Carolina placing their imprimatur or approbation upon this practice.

In Florida,

Under certain circumstances, it is reversible error for the trial court to provide the jury with a copy of only a portion of the jury instructions; if the trial court provides the jury with any written instructions, it must provide the jury with all of the instructions. *Van Loan v. State,* 779 So.2d 497 (Fla. 2d DCA 2000); *Pettit v. State,* 612 So.2d 1381 (Fla. 2d DCA 1992); *Wilson v. State,* 746 So.2d 1209 (Fla. 5th DCA 1999); Fla. R.Crim. P. 3.400(a)(3).

*Bouchard v. State,* 847 So.2d 598, 599 (Fla.App. 2 Dist.2003).

According to *Jewell v. State,* 624 N.E.2d 38, 43 (Ind.App. 1 Dist.1993):

In Indiana, the accepted practice is not to allow the jurors to take the written instructions with them into the jury room. *Cornett [v. State],* 436 N.E.2d 765 [(Ind.1982)]. However, the trial court has discretion to send the entire body of written instructions to the jury "cleansed" of extraneous information. *Mitchell v. State* (1989), Ind., 535 N.E.2d 498, 501.

*See also Denton v. State,* 455 N.E.2d 905 (Ind.1983) ("It is also the general rule of law that jury instructions are not to be sent to the jury room.").

Pursuant to statute in New York,

At any time during its deliberation, the jury may request the court for further instruction or information with respect

to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper. With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper.

N.Y.Crim. Proc. Law 310.30 (McKinney 2002). In *People v. Johnson,* 81 N.Y.2d 980, 981–82, 599 N.Y.S.2d 525, 615 N.E.2d 1009 (N.Y.1993), the Court of Appeals of New York held:

We affirm the order of the Appellate Division because CPL 310.30 prohibits giving "copies of the text of any statute" to a deliberating jury without the consent of the parties. Here, defendant expressly objected to complying with the jury's request to receive the entire charge in writing, which included statutory textual material.

The fact that CPL 310.30 allows a deliberating jury to "request the court for further instruction or information * * * with respect to any * * * matter pertinent to the jury's consideration of the case" does not impliedly authorize an override of the specific prohibition. Inasmuch as the entire written jury instruction included forbidden statutory textual material, the Appellate Division correctly concluded that the trial court committed reversible error in providing that material to the jury over defendant's objection (*see, People v. Taylor,* 76 N.Y.2d 873, 560 N.Y.S.2d 982, 561 N.E.2d 882 [(1990)]; *People v. Nimmons,* 72 N.Y.2d 830, 530 N.Y.S.2d 543, 526 N.E.2d 33 [(1988)]; *People v. Owens,* 69 N.Y.2d 585, 516 N.Y.S.2d 619, 509 N.E.2d 314 [(1987)]).

The New York case of *People v. Sanders,* 70 N.Y.2d 837, 523 N.Y.S.2d 444, 517 N.E.2d 1330 (1987), is particularly on point. In *Sanders,* the Court of Appeals of New York ruled the "consent of defense counsel is an 'absolute precondition' to furnishing the jury with the text of a statute because 'questions may arise concerning which sections of pertinent statuto-

ry material should be given to the jury.'" *Sanders* at 838, 517 N.E.2d 1330.

Because South Carolina has no applicable statute or rule, I vote to reverse Covert's conviction on the ground that submission of only the trafficking statute to the jury tainted the fairness of his trial.

### JURY VERDICT FORM

In addition to the submission of the trafficking statute, I find prejudicial error in the court's verdict form. The jury verdict form utilized by the circuit judge read as follows:

**I. Trafficking in Cocaine**

Do you unanimously find, beyond a reasonable doubt that Kevin Paul Covert:

1. Knowingly sold, manufactured, cultivated, delivered, purchased or brought into this state 10 grams or more of cocaine?

YES _____ NO _____

If yes, how many grams? _____

2. Provided financial assistance or otherwise aided abetted attempted or conspired to sell, manufacture, cultivate, deliver, purchase or bring into this state 10 grams or more of cocaine?

YES _____ NO _____

If yes, how many grams? _____

3. Was knowingly in actual or constructive possession of 10 grams or more of cocaine?

YES _____ NO _____

If yes, how many grams? _____

4. Knowingly attempted to become in actual or constructive possession of 10 grams or more of cocaine?

YES _____ NO _____

If yes, how many grams? _____

**II. Possession with Intent to Distribute Cocaine**

If your answer to all four of the above questions is **NO,** then answer this question:

Do you unanimously find, beyond a reasonable doubt that Kevin Paul Covert possessed with intent to distribute less than 10 grams of cocaine?

**YES** _____    **NO** _____

### III.  Simple Possession of Cocaine

If your answer to all five of the above questions 1 through 4 and II is **NO,** then answer this question:

Do you unanimously find that Kevin Paul Covert possessed cocaine?

**YES** _____    **NO** _____

### IV.  Proximity

If your answer to any of the above questions except III, Simple Possession of Cocaine, was **YES,** then answer this question:

Do you unanimously find beyond a reasonable doubt, that the above conduct occurred within a radius of one half mile of the grounds of a public or private elementary, middle, or secondary school or public playground or park, a public vocational or trade school or technical educational center;  or a public or private college or university?

**YES** _____    **NO** _____

In my view, the jury verdict form should have provided the specific option of finding the defendant **NOT GUILTY.**  This Court, in *State v. Myers,* 344 S.C. 532, 536, 544 S.E.2d 851, 853 (Ct.App.2001), observed,

> **It is the preferred practice to submit the possible verdict of "not guilty" to the jury;  however, the law to be charged must be determined from the evidence presented.**  *State v. Somerset,* 276 S.C. 220, 221, 277 S.E.2d 593, 594 (1981);  *State v. Rogers,* 275 S.C. 485, 486, 272 S.E.2d 792, 792 (1980).  **A jury should be instructed that one verdict it can reach is "not guilty," especially where the crime charged is of a serious nature.**  *State v. Griggs,* 184 S.C. 304, 315–16, 192 S.E. 360, 365 (1937) (stating that where the trial judge in his charge instructed the jury that if it had a reasonable doubt as to appellant's guilt it must find him not guilty, there is no reversible error if the trial

judge then fails to tell the jury that "not guilty" is one verdict it could render).

(Emphasis added.)

The *Myers* court found the "trial judge's clear and cogent jury instructions ameliorated any possible prejudice emanating from the failure to include 'not guilty' on the verdict form." *Id.* In contradistinction to the judge's "clear and cogent jury instructions" in *Myers*, the judge's jury instructions in this case failed to immunize the verdict form due to the improper and prejudicial act of submitting the trafficking statute to the jury. Not only was the jury inundated with the many ways it could find the defendant guilty, the defective verdict form omitted the "not guilty" option. Therefore, the judge's charging practice compounded the prejudice of the verdict form rather than ameliorating it.

"A denial of due process occurs when a defendant in a criminal trial is denied the fundamental fairness essential to the concept of justice." *State v. Hornsby*, 326 S.C. 121, 129, 484 S.E.2d 869, 873 (1997) (citation omitted). I find the circuit judge's overemphasis of the ways the jury could find Covert guilty and the concomitant underemphasis of Covert's fundamental and constitutionally guaranteed rights encouraged the jury, again and again, to find the defendant guilty. The result in the instant case is that the jury was excessively encouraged to find the defendant guilty, rendering the trial unfair. Covert was deprived of due process of law. Accordingly, I **VOTE** to **REVERSE** the conviction and sentence and **REMAND** for a new trial.

GOOLSBY, J. (dissenting):

I would affirm the judgment below and for that reason I write separately.

1. Covert maintains the trial court erred in denying his motion to suppress evidence due to what Covert claims was a defective warrant and in applying a good faith exception to a statutory warrant requirement.

On September 26, 2002, Greenville Detective Timothy Conroy, after being sworn by a magistrate to tell the truth, applied to the magistrate for a warrant authorizing the search of Covert's residence. The affidavit Conroy submitted in

support of his application for a search warrant provided a description of the premises to be searched and the property sought. His application also incorporated an attached one-page, second affidavit that presented the facts on which he set forth probable cause for issuance of the search warrant. The date of September 26, 2002, and the signatures of Conroy and the magistrate appear on the affidavit and its attachment.

Later, at Covert's trial, Conroy testified *in camera* the magistrate reviewed his affidavit and issued the search warrant. Conroy also testified he and other officers, with the affidavit and search warrant in hand, immediately executed the search warrant at Covert's residence. An officer other than Conroy signed the return on September 27, 2002; however, the search warrant, which the magistrate signed, bears the date of the following day, *i.e.,* September 28, 2002.

Covert moved to suppress the evidence seized from his residence pursuant to the search warrant, pointing to evidence that the search occurred prior to the date that appears on the search warrant and claiming the magistrate failed to sign the warrant prior to its execution. The trial court, however, upheld the search, basing its holding, as noted above and as Judge Short's opinion more fully discusses, on a good faith exception.[3]

Unlike Judge Short and the trial court, I see no need to address the question of whether a good faith exception should be applied in an instance where the issuing magistrate's signature reflects a date later than those appearing on the affidavit and the return. Another ground appearing in the record supports the judgment of the trial court.[4]

---

3. The trial court, over Covert's objection, later admitted as a court exhibit the search warrant log maintained by the magistrate; however, the trial court did not change its earlier ruling regarding the sufficiency of the search warrant.

4. *See State v. Arnold,* 319 S.C. 256, 460 S.E.2d 403 (Ct.App.1995) (holding Rule 220(c), SCACR, allows the court of appeals to affirm on any ground appearing in the record); *see also I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (holding under Rules 208(b)(2) and 220(c), SCACR, a respondent, as a prevailing party in the trial court, may raise on appeal any additional reasons the appellate court should affirm the trial court regardless of whether the reasons

The validity of the search warrant did not depend either upon a date appearing above the magistrate's signature nor upon there being a signature of the issuing judicial officer. Nothing in the statute governing the issuance of search warrants in South Carolina, S.C.Code Ann. § 17–13–140 (2003),[5] as Judge Short himself acknowledges, "specifically require[s] that the [search] warrant be signed." Moreover, nothing in the statute requires it to be dated, for that matter.

Here, the magistrate either wrote an incorrect date on the warrant when she signed it or failed to sign the warrant when she issued it, but then signed and dated the warrant after the officer returned it. At most, the omission of the date and signature or of the date when a magistrate issues a search warrant, without more, constitutes a ministerial defect that does not affect its validity.[6] And as this court has held, a

were presented to or ruled on by the trial court, provided the respondent's additional sustaining grounds appear in the record on appeal).

5. Section 17–13–140 provides in relevant part as follows:

Any magistrate ... having jurisdiction over the area where the property sought is located, may issue a search warrant to search for and seize ... any ... drugs ... possessed ... in violation of any of the laws of this State....

. . . .

A warrant issued hereunder shall be issued only upon affidavit sworn to before the magistrate ... establishing the grounds for the warrant. If the magistrate ... is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched.

6. *See State v. Smith,* 562 N.E.2d 428 (Ind.Ct.App.1990) (noting the search warrant statute contained no explicit requirement that the issuing magistrate sign a search warrant in order to validate it and holding the failure of the issuing judge to sign a search warrant did not invalidate the warrant when the magistrate found probable cause and intended to issue it; the court concluded the addition of a signature was a ministerial task); *Commonwealth v. Pellegrini,* 405 Mass. 86, 539 N.E.2d 514 (1989) (holding a failure of a judge to sign a warrant was a ministerial error that did not invalidate the warrant in the absence of a constitutional or statutory requirement that the issuing judge, without exception, sign a search warrant); *see also Yuma County Attorney v. McGuire,* 109 Ariz. 471, 512 P.2d 14, 15–16 (1973) (stating even where the statute required a magistrate's signature, "[w]arrants and the affidavits on which they are based must be read in a common-sense way rather than technically" and holding a magistrate's inadvertent failure to sign a search warrant was an oversight that did not invalidate the

ministerial error will not invalidate an otherwise valid search warrant under section 17–13–140.[7]

I add one final note regarding the search warrant. Covert does not argue the search warrant otherwise failed to meet either constitutional[8] or statutory standards. He does not

warrant where the judge signed the affidavit in support of the warrant and considered the existence of probable cause and thus intended by his action to give legal effect to the issuance of the warrant); *People v. Superior Court*, 75 Cal.App.3d 76, 141 Cal.Rptr. 917 (1977) (holding a magistrate's inadvertent failure to sign a search warrant did not require suppression of evidence seized pursuant thereto); *State v. Spaulding*, 239 Kan. 439, 720 P.2d 1047 (1986) (holding where a judge made findings of probable cause and intentionally issued a search warrant, the warrant was not void because the issuing judge failed to sign it where the warrant was executed and returned to the same judge and filed on the same date it was issued); *State v. Andries*, 297 N.W.2d 124 (Minn.1980) (stating the requirement that an issuing judge sign a search warrant is a purely ministerial task); *cf.* S.C. Op. Atty. Gen. 295 (1977) (advising, per the attorney general, that only judicial officers may sign a search warrant).

The Arizona, California, and Minnesota statutes, respectively Ariz. Rev.Stat. § 13–1441 (now renumbered as § 13–3911), Cal.Penal Code § 1523, and Minn.Stat. Ann. §§ 626.05 and 626.11, expressly require a search warrant to be signed. Yet, the appellate courts of these three states found the lack of a signature to be ministerial in nature. Other courts, however, hold a failure to sign a warrant invalidates the warrant and renders its issuance a nullity where the statutes expressly require a signature by a judicial officer. *See, e.g., Kelley v. State*, 55 Ala.App. 402, 316 So.2d 233 (Crim.App.1975) (discussing a statute defining a search warrant as "an order in writing in the name of the state, signed by a magistrate"); *Martin v. State*, 344 So.2d 248, 249 (Fla.Dist.Ct.App.1976) (noting the statute contained language stating that the magistrate shall "issue a search warrant signed by him").

7. *See, e.g., State v. Weaver*, 361 S.C. 73, 602 S.E.2d 786 (Ct.App.2004) (holding a failure to observe the requirement that search warrants be executed and a return made within ten days after the date of the warrant does not invalidate the search); *State v. Mollison*, 319 S.C. 41, 459 S.E.2d 88 (Ct.App.1995) (stating the failure to list on the return all the items seized or to make the return within ten days is a ministerial error that does not invalidate the search).

8. Article 1, section 10 of the South Carolina Constitution, which mirrors the Fourth Amendment to the United States Constitution, contains no signature and dating requirement. S.C. Const. art. 1, § 10. It requires only that the warrant issue "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained." *Id.*

contend the magistrate did not issue the search warrant, she lacked probable cause to issue it, or she did not intend to issue it.

2. Covert argues the trial court abused its discretion in not granting a mistrial when the lawyer for Covert's codefendant, Charles Henderson, made an apparently factually incorrect statement regarding Covert during closing argument.

In his closing argument, Henderson's counsel attacked the credibility of Donald Myers and Roger Harris, both of whom testified about buying cocaine from Covert and Henderson. Counsel pointed to Myers's statements to the police and said the first time Myers implicated Henderson was after Myers received a free "get out of jail card." Counsel followed this assertion with the remark that "[a]ccording to Mr. Covert[,] he confirmed that Roger [Harris] ... had been buying cocaine from him for two years" and that Myers's statement didn't "mention Mr. Henderson in a conspiracy with him." Covert objected, arguing this undermined Covert's credibility because counsel had mentioned Henderson's involvement and counsel's statement created the impression in the jury's mind that Covert had been dishonest with the police when he gave his statement to them following his arrest. Covert's criminal involvement with Henderson had earlier been redacted from Covert's published statement to the police.

Covert refused an offer by the trial judge for a curative instruction and insisted on a mistrial.

The question of whether to grant or deny a motion for mistrial rests within the sound discretion of the trial court [9] whose decision will not be disturbed on appeal absent an abuse of discretion amounting to an error of law.[10]

The trial court did not abuse its discretion in this instance. The reference to Covert was an isolated one and was not directed to Covert's guilt, but to the veracity of Myers. Moreover, evidence as to Covert's guilt in the context of the entire record was overwhelming, particularly since he admit-

9. *State v. Dawkins,* 297 S.C. 386, 377 S.E.2d 298 (1989).

10. *State v. Harris,* 340 S.C. 59, 530 S.E.2d 626 (2000).

ted to selling cocaine both before and after September 26, 2002.[11]

3. Covert further contends the trial court erred in not sustaining his objection to the closing argument of the solicitor.

After counsel for Covert offered a general objection to the solicitor's closing argument, the trial court effectively sustained the objection, saying, "Yes, sir. I think you need to move on to the facts of the case." Covert neither moved to strike the objectionable portion of the solicitor's argument nor moved for a curative instruction or mistrial. Having gotten what he asked for, Covert cannot complain now.[12]

4. Covert also complains about the special verdict forms and copies of the trafficking statute given by the trial court to the jury in connection with its charge on the offense of trafficking. The forms contained no statements regarding the presumption of innocence and the burden of proof. He claims these written materials had the effect of suggesting a guilty verdict to the jury.

Covert suffered no prejudice. Indeed, the trial court's oral jury instructions, which Covert did not challenge, removed any possible prejudice Covert may have suffered on account of the use by the jury of the forms and copies of the trafficking statute.[13] Moreover, the trial court made it abundantly clear

---

11. *See State v. Hamilton*, 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001) (noting an appellate court will review an alleged error in the context of the entire record and may affirm under a harmless error analysis where there is overwhelming evidence of guilt), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005).

12. *See, e.g., State v. Patterson*, 324 S.C. 5, 18, 482 S.E.2d 760, 766 (1997) (holding the alleged impropriety of the solicitor's closing argument was not preserved for review where the trial court sustained an objection by defense counsel, but counsel did not move to strike or request a curative instruction); *State v. McFadden*, 318 S.C. 404, 458 S.E.2d 61 (Ct.App.1995) (noting no error was preserved for review where the trial court sustained defense counsel's objection to testimony and counsel made no further motion to strike the testimony).

13. *See State v. Myers*, 344 S.C. 532, 544 S.E.2d 851 (Ct.App.2001) (concluding the jury's use of a special verdict form did not prevent the jury from finding the defendant not guilty in light of the trial court's instructions).

to the jury that a "not guilty" verdict was one of the possible verdicts it could return with regard to each charge, notwithstanding the special verdict form did not have the words "not guilty" printed upon it. As for the copy of the trafficking statute given each juror, it merely provided additional information regarding an offense with which Covert was charged and served to aid the jury in reaching a proper verdict.

5. Regarding Covert's argument that a cumulative effect of errors requires a reversal of his conviction, the issue is not preserved for appeal, even assuming the presence of "errors." The issue was neither raised to nor ruled on by the trial court.[14] In any case, the purported errors, which Covert says involve the closing arguments and the written materials given the jury, are insufficient to warrant a new trial when weighed against the evidence of Covert's guilt, particularly when his statement to the police is considered.

I would affirm.

---

**14.** *State v. Adams,* 354 S.C. 361, 380, 580 S.E.2d 785, 795 (Ct.App. 2003) ("Arguments not raised to or ruled upon by the trial court are not preserved for appellate review.").